(December 13, 1899.)

## IDAHO GOLD MINING COMPANY v. WINCHELL.

[59 Pac. 533.]

LIEN—INTERPLEADER ACTION.—A person who files a lien on property for material furnished, and thereafter appears in an interpleader action brought to determine the priority of the rights of creditors to the purchase price paid for the property on which the lien is claimed, and demands that his claim be paid out of said fund, waives such lien and is estopped from foreclosing the same.

MINING CLAIMS—OUSTER.—Where one unlawfully ousts the owner from mining claims and in working the same creates debts, such debts are not legal claims for liens against the mining claims.

ESTOPPEL—PURCHASE PRICE FUND.—Where one has a valid lien on property for the payment of a debt, and such property is sold on a contract made prior to the creation of such debt, and the claimant goes into a court of equity and asks to have his lien claim paid out of the purchase price fund, he is estopped from thereafter resorting to such property to make such debt.

DECREE OF COURT OF SISTER STATE.—A decree of a court of equity which has jurisdiction of the parties is binding on them, and if such decree affects the title to real property in another state such decree will be given force in that state.

(Syllabus by the court.)

APPEAL from District Court, Bannock County.

E. E. Chalmers, for Appellant.

The findings show that the alleged lien of Mr. Winchell is based upon the fact that he furnished wood or cordwood to the Union company while it was in possession of the mines. This wood was furnished subsequent to July 10, 1895, the date the Union company ousted plaintiff, and prior to January 14, 1896, the date the lien was filed. Consequently all rights herein are to be determined by the lien law of 1893 as amended in 1895. (Laws 1893, p. 49.) Subsequent sections give every person performing labor upon or furnishing cordwood, etc., a lien upon the wood. (Laws 1893, pp. 55-57.) These liens are purely statutory. If the statute does not expressly give the lien none exists. Nothing is plainer than the fact that a person who furnishes wood or cordwood to a mining company has no lien upon

the mine for the payment for his wood. He has the right to file a lien upon the wood, but not upon the mine. The principle of statutory interpretation here announced was applied in *Williams v. Toledo Coal Co.,* 25 Or. 426, 42 Am. St. Rep 799, 36 Pac. 159; *Silvester v. Quartz Min. Co.,* 80 Cal. 510, 22 Pac. 217; see, also, 13 Ency. of Law, 597. The record shows that the Winchell lien accrued between July 10, 1895, and January 1, 1896. It was foreclosed September 24, 1896; that is, the judgment of foreclosure was given on that day. The Idaho Gold Mining Company was not a party to the action. Therefore, the judgment of foreclosure is of no effect as to plaintiff herein, because plaintiff was not a party to the action wherein the same was given. (*Falconer v. Cochran,* 68 Minn. 405, 71 N. W. 386; 2 Black on Judgments, sec. 534.) As to the alleged lien, it is absolutely void as to plaintiff, because not enforced against plaintiff within six months after it was filed. The laws of Idaho provide that a lien shall be void unless enforced within six months after filing. (Idaho Laws, 1895 pp. 48-50; *Stoermer v. Bank,* 152 Ind. 104, 52 N. E. 606; *Falconer v. Cochran,* 68 Minn. 405, 71 N. W. 386.) It is a fundamental proposition in the law of every enlightened country, and particularly in the law of our country, that no person shall be deprived of his property without his consent, either express or implied. To permit a trespasser to cumber the property of an innocent and nonconsenting third person with charges and liens is to place the power of confiscation in private hands. (*Spruck v. McRoberts,* 139 N. Y. 193, 34 N. E. 896; *Hankinson v. Vantine,* 152 N. Y. 20, 46 N. E. 292; *Eaton v. Rocca,* 75 Cal. 93, 16 Pac. 529; *Fuller v. Pauley,* 48 Neb. 138, 66 N. W. 1115; *Steele v. Mining Co.,* 4 Idaho, 505, 42 Pac. 585.) Mr. Winchell either deemed the Union company the owner of the property, or he considered it agent of the owner. If he deemed it owner, his lien should be confined to its interest in the property, which is nothing. (*Jurgenson v. Diller,* 114 Cal. 491, 55 Am. St. Rep. 83, 46 Pac. 610; *Eaton v. Rocco,* 75 Cal. 93, 16 Pac. 529.) Mr. Winchell appeared in the interpleader suit and set up his claim to the fund, and the court found and decided that the Idaho company was entitled to have its property in Idaho

freed of the liens and claims of defendants. His position in that matter is so inconsistent with his present attitude that it works an estoppel independently of the adjudication. (*Blaker v. Morse,* 60 Kan. 24, 55 Pac. 274; 2 Black on Judgments, sec. 632; Bigelow on Estoppel, 5th ed., 673-694; *Parke Co. v. White River Co.,* 101 Cal. 37, 35 Pac 442.) The findings and decree in the interpleader suit are binding in all respects, both as to his claim upon the fund and as to his alleged lien upon the Idaho property. The decree of the court of equity having jurisdiction of the parties is binding upon those parties wherever they may be, and if it affects the title to property in another state, it will be given force in that state. (Black on Judgments, sec. 872; *Burnley v. Stevenson,* 24 Ohio St. 474, 15 Am. Rep. 621; *Newton v. Bronson,* 13 N. Y. 587, 67 Am. Dec. 89; *McGee v. Sweeney,* 84 Cal. 100, 23 Pac. 1117; *Goodman v. Niblack,* 102 U. S. 556; *Remar v. McKay,* 35 Fed. 86; *Townsdin v. Shrader,* 39 Kan. 286, 18 Pac. 186; *Southern Pac. R. R. Co. v. United States,* 168 U. S. pp. 48-53, 18 Sup. Ct. Rep. 18; *Wolf River Lumber Co. v. Brown,* 88 Wis. 638, 60 N. W. 996.)

W. T. Reeves and Thomas F. Terrill, for Respondent Winchell.

On the claim that Winchell had no lien because his claim was for wood, we call the court's attention to the twelfth finding of fact—wherein the court finds it was for wood actually used in the operation of the mine, and that a lien existed therefor is conclusive, and cannot be reviewed on this appeal, the evidence upon which it is based not being before this court by bill of exceptions or motion for a new trial. (*Wheeler v. Hayes,* 3 Cal. 287.) The sole issue presented by the pleadings in the case of *Wells, Fargo & Co. v. Union Mining and Milling Co. et al.,* was, Who is entitled to the money held by it? The question as to any existing liens upon the mining property located in Idaho, which was not even referred to in such pleadings, was not, and could not, be settled in that action, and any finding or conclusion or decree that might have been made in that action, outside of the issues thus presented, were and are void and are not binding on any party. (*Gregory v. Nelson,* 41 Cal. 278; *Cummings*

*v. Cummings,* 75 Cal. 441, 17 Pac. 442; *Rudel v. Los Angeles Co.,* 118 Cal. 288, 50 Pac. 400.)

SULLIVAN, J,—This action was commenced against twenty-eight defendants for the purpose of quieting the title to the Robinson and Austin mining claims and the Robinson millsite, all of which are patented and located in Bingham county. Due service of the summons was made on all of the defendants. Some of them suffered default, others filed disclaimers, and others demurred, which demurrers were overruled, and those demurring refused to plead further. Only the defendant Winchell answered and defended in the case. Judgment was entered in conformity with the prayer of the complaint against all of the defendants except the respondent, Winchell; and, as to him, the court found that he had a valid lien and judgment against the said mining claims and millsite for the sum of $649.47 and costs, which he was entitled to enforce. This appeal is from the judgment in favor of Winchell.

Numerous errors are assigned, all to the effect that the court erred in rendering judgment in favor of Winchell, the respondent.

The following facts appear from the record. That on the twenty-eighth day of November, 1894, E. E. Chalmers and others were the owners of said mining claims, and the millsite and improvements thereon, and on that date entered into an agreement with the Idaho Gold Mining Company, the appellant, whereby they agreed to sell and convey, by good and sufficient deed of conveyance, free and clear of all encumbrances, said property to appellant for the sum of $5,700, to be paid in certain stipulated payments; said payments to be made at the bank of Wells, Fargo & Co., at Salt Lake City, Utah. A deed of said property, executed by said Chalmers and his co-owners, was at that time placed in escrow in said bank, to be delivered to the appellant corporation upon its making the payments as stipulated in said agreement. It was also agreed therein that the appellant should have immediate possession of said property, with the right to work the same during the life of said contract. It was also agreed that a former contract made by said E. E. Chalmers and co-owners with one Wilson for the sale

of said property, and which had been assigned to the appellant, should be surrendered to said Chalmers and his co-owners, which was done, and thereupon the appellant was put in possession of said mining claims, millsite and other property, and began work thereon. That on the twenty-eighth day of January, 1895, said first-mentioned contract was duly recorded in the recorder's office in said Bingham county, Idaho. That on the sixteenth day of August, 1894, and prior to the making of the first-mentioned contract, said Chalmers and his co-owners of said property entered into an agreement with the Union Mining and Milling Company (hereinafter referred to as the "Union company"), whereby they gave said company an option to purchase said property, and that said option was forfeited by said Union company by reason of its failure to perform the stipulations of said contract agreed to be performed by it. Said forfeiture occurred prior to the making of the contract of November 28, 1894, with the appellant corporation. That on or about July 15, 1895, said Union company, claiming possession of said property under and by virtue of said forfeited option, entered upon said property, and unlawfully ousted appellant therefrom, and unlawfully held possession thereof from that date until about January 1, 1897. That during the time that said Union company so held possession of said property the respondent, Winchell, furnished wood to said last-mentioned company, which was used by said company in operating the mill situated on said property, and in working said mines. The Idaho Gold Mining Company, the appellant, kept and performed its contract with the owners of said property, and paid said $5,700, as it had agreed to, and the escrow deed was delivered to it. During the time that said Union company was thus unlawfully in the possession of said property it contracted a large amount of indebtedness in operating said mines and property, and failed to pay the same. Thereupon some of the creditors, and among them the respondent, attempted to file liens against said property, thus attempting to hold the property for the sums due them. That, after said $5,700 was so paid into said bank, said creditors desired to have the amounts due them paid therefrom. Thereupon said bank brought an action in the district court of the third judicial dis-

trict of the state of Utah to compel said creditors to interplead among themselves, and to thus litigate and settle their various claims and priorities in and to said purchase money. That, among many others, respondent, Winchell, appeared therein, and answered, claiming an interest in said money. Thereafter said action was tried, and judgment made and entered for the distribution of said fund among the various creditors according to their respective priorities. The respondent failed to get any part of said money applied on his claim. The trial court found the facts as above stated, among others, and also found, as a conclusion therefrom, that the respondent, Winchell, was not bound or estopped by the findings and judgment entered by said Utah court in said interpleader suit, and that the appellant was entitled to the discharge of its said property from the liens and claims of each and all of the defendants, except that of respondent Winchell, and also found that Winchell's lien for $649.47, with costs, was a prior lien, and that he was entitled to foreclose the same. The Utah court found that appellant was entitled to a discharge of all of said property from the liens and claims of all the defendants, Winchell, the respondent, being one of them. It is also shown that the Union company procured deeds from the owners of said property to the greater portion of it during the time that the contract of sale with the appellant was in full force; that is, the owners, after making the contract with the appellant corporation, and while the same was in force, executed deeds of conveyance to the Union company for the most of said property.

It is contended by counsel for respondent that the Union company was not only the agent for, but the owner of, said property, so far as liens created in the working of said mines was concerned, and he calls attention to Session Laws of Idaho, 1893, page 49, in support of that contention. We cannot construe said act to support respondent's contention. Section 1 of said act is as follows:

"Section 1. Every person performing labor upon, or furnishing materials to be used in the construction, alteration or repair of any mining claim, building, wharf, bridge, ditch, dike, flume, tunnel, fence, machinery, railroad, wagon road, aqueduct to

create hydraulic power or any other structure, or who performs labor in any mine or mining claim, has a lien upon the same for the work or labor done or materials furnished, whether done or furnished at the instance of the owner of the building or other improvement or his agent; and every contractor, subcontractor, architect, builder, or any person having charge of any mining or of the construction, alteration or repair, either in whole or in part, of any building or other improvement, as aforesaid, shall be held to be the agent of and owner for the purpose of this chapter; provided, that the lessee or lessees of any mining claim shall not be considered as the agent or agents of the owner under the provisions of this chapter."

We do not think said act was intended to include a transaction like the one in the case at bar. If a person or corporation can unlawfully take and hold possession of the property of another, and create liens against it, as was done in this case, an owner may be deprived of his property without his consent, and without due process of law. Had the Union company gone into possession of said property with the consent of the appellant, then a very different question would be presented.

Counsel for respondent admit that the only question for determination is, Was the Union company the owner of that said property for the purpose of creating the lien of respondent? We answer that question in the negative. Respondent in his answer avers that at the time he furnished said wood to the Union company it was "working and operating said mines as owners, and not as lessees, of any person or company," and that his claim of lien was filed, and suit brought to foreclose the same, against said Union company, and judgment then taken against it. The appellant company was not made a party to said suit, nor had it any interest therein. The respondent evidently considered the Union company the owner of said mining claims, and, under the facts of this case, his lien must be confined to his interest in said mining claims, which was nothing, at least, after the purchase price had been paid by the appellant. It is well settled that a lien like that under consideration cannot be imposed on property by one who has unlawfully ousted the owner. If so, it would be taking his property without his consent, against his will, and without due process of law.

In the interpleader action in the Utah court, respondent claimed an interest in the purchase price fund paid by appellant for said property, and asked to have his claim paid out of it. That fund was exhausted in the payment of claims prior to that of respondent's. He is estopped by his election to look to said fund, as well as by the force of the adjudication of the Utah court and the facts of the case. It is well settled that a decree of a court of equity, having jurisdiction of the parties, is binding on them, and, if it affects title to property in another state, such decree will be given force in that state. (Black on Judgments, sec. 872; *McGee v. Sweeney,* 84 Cal. 100, 23 Pac. 1117; *Goodman v. Niblack,* 102 U. S. 556, 26 L. ed. 229.) The Utah court agreed that said pretended lien of respondent on said property was not a lien thereon, and that said property was discharged from the liens and claims of each and all of the defendants to that action, and this court will give effect and force to that decree. The judgment in defendant's favor is reversed, and the cause remanded, with instructions to the lower court to set said judgment in favor of respondent aside, and to enter judgment and decree quieting appellant's title to said property as against said lien of respondent. Costs of this appeal are awarded to the appellant.

Huston, C. J., and Quarles, J., concur.