[Civil No. 856.   Filed March 30, 1905.]

[80 Pac. 345.]

F. L. BUTTERFIELD et al., Plaintiffs and Appellants, v. THE NOGALES COPPER COMPANY, a Corporation, et al., Defendants and Appellees.

1. EQUITY—JURISDICTION—PERSON—LAND IN FOREIGN STATE.—A court of equity, having acquired jurisdiction over the person of the defendant, has jurisdiction to enter any decree which may concern or affect lands situated in a foreign state to the same extent and as fully as though these were situated within the state where the court has its *situs.*

2. VENDOR AND PURCHASER—FRAUD—COMPLAINT—SUFFICIENCY — EQUITABLE RELIEF.—A complaint setting forth that defendants under a contract to purchase of plaintiffs obtained possession of certain mining claims situate in Mexico, and removed the monuments set up by plaintiffs and set them up in another direction, so as to exclude a large body of ore, and then located for themselves a claim where plaintiffs' claims had been, states facts constituting such fraud and misconduct as to entitle plaintiffs to relief in equity, by declaring defendants trustees of the property covered by the original locations, to require them to convey an interest in said property to plaintiffs, and to enjoin them from selling, encumbering, or otherwise disposing of the same.

3. SAME—ADVERSE POSSESSION—FRAUD.—Defendants, in possession under a contract of purchase of mining ground, cannot obtain title thereto by an act of actual fraud made possible by the possession thus gained and hold the same adversely to plaintiffs.

4. SAME — CONTRACT — PURCHASING MINING CLAIM—VENDEE'S FAILURE TO SIGN—IMMATERIAL—WHERE PART PAYMENT MADE AND POSSESSION TAKEN.—Where defendants make part payment and enter into possession of a mining claim under a contract signed by *plaintiffs,* they are bound thereby, and the fact that *defendants* did not sign the contract is immaterial.

APPEAL from a judgment of the District Court of the First Judicial District in and for the County of Santa Cruz. George R. Davis, Judge.   Reversed.

The facts are stated in the opinion.

Thomas & Thomas, Goudy & Twitchell, and Thomas D. Satterwhite, for Appellants.

No appearance for Appellees.

SLOAN, J.—The appellants, Mrs. F. L. Butterfield and Charles Dougherty, filed their complaint in the district court of Santa Cruz County, alleging, in substance, the following facts: That the plaintiffs are residents of the state of Colorado; that the defendant the Nogales Copper Company is a corporation organized under the laws of Arizona; that the defendant the Cerro Prieto Mining Company is a corporation organized under the laws of the republic of Mexico; that the defendants J. R. Grant, W. F. Chenoweth, H. K. Chenoweth, and R. N. McPherson are residents of Arizona; and that the defendant Manuel M. Maldonado is a resident of the republic of Mexico; that in May, 1898, plaintiffs and the defendant Maldonado discovered and denounced under the Mexican laws two mining claims—one called the "Margarita," consisting of five mining pertenencias, and one called the "Enterprise," consisting of fifteen mining pertenencias—situated in the jurisdiction of the municipality of Cucurpe, district of Magdalena, state of Sonora, republic of Mexico; that said claims were properly surveyed, staked off, and monumented as required by the Mexican laws; that by· agreement between plaintiffs and said Maldonado the former paid all the costs of location and survey of said claims and the taxes and all other fees and charges required by the rules, regulations, and laws of the republic of Mexico pertaining to such locations, and that they thereby became, under said agreement, the owners of an undivided three-fourths interest in the said claims, and were recognized by said Maldonado thereafter as the owners of said undivided three-fourths interest; that on the fifteenth day of October, 1899, plaintiffs entered into a written agreement with the defendant W. F. Chenoweth, who then and there acted for himself and for his co-defendants H. K. Chenoweth, J. R. Grant, and R. N. McPherson, under the terms of which agreement the plaintiffs agreed to sell to said defendants an undivided two-thirds interest in said mining claims in consideration of the payment of five hundred dollars cash, and the further sum of fourteen thousand five hundred dollars within one year from the date of said agreement. The said purchasers agreeing to pay all taxes due the Mexican government on behalf of said claims during the life of the

agreement, and upon the payment of said last-mentioned sum within the time mentioned a deed to said undivided two-thirds interest was to be made and delivered by plaintiffs to said defendants; that said agreement was signed by the plaintiffs; that under said agreement the said defendants paid the said sum of five hundred dollars, and went into possession of the mining claims. On information and belief the plaintiffs further alleged that immediately upon taking possession of said mining claims under said agreement the said defendants, purchasers under said agreement, entered into a conspiracy among themselves and with other persons unknown to the plaintiffs to defraud plaintiffs out of their property, and in pursuance to the said conspiracy tore down and removed the original monuments set up by the locators, and set them up in another direction, for the purpose of changing the surface of said mining claims so as to exclude therefrom a large vein and ledge clearly exposed on the surface, rich in mineral, and which, as located and surveyed, ran through the center of said mining claims; that immediately upon removing the monuments erected by plaintiffs and setting them up in another direction the said defendants, purchasers under said agreement, denounced four mining claims covering the same territory and land embraced within the original locations of the Margarita and Enterprise claims as those were originally surveyed and monumented; that said defendants afterwards and on the twelfth day of March, 1900, organized the said Cerro Prieto Mining Company, and conveyed the said claims so located by them, called the "Cerro Prieto," the "Nogales," the "Grant," and the "Eliza," to said company; that in the organization of said Cerro Prieto Mining Company the said defendants each became a one-fourth owner therein; that after the organization of said company it applied for and received from the republic of Mexico title to said Cerro Prieto, Nogales, Grant, and Eliza mining claims; that in thus obtaining title in itself the said company well knew the plaintiffs' rights in the premises; that on information and belief plaintiffs further allege that in the year 1900 the said defendants organized the defendant company The Nogales Copper Company, and each became and is now the owner of one fourth of the stock of the said company; that an agreement has been entered into between the Cerro Prieto Mining Company and

the said defendants W. F. and H. K. Chenoweth, J. R. Grant, and N. R. McPherson that the said company should convey to the said Nogales Copper Company the said mining claims. Plaintiffs further allege that the said defendants, and each of them, at all times herein mentioned had full knowledge of plaintiffs' rights in the premises; that when the said defendants, purchasers under the said agreement, entered into possession of the said Margarita and Enterprise claims, the agent of plaintiffs took the last-named defendants to the said premises, and showed them the monuments and surface boundaries thereof; that the said defendants, after going into possession of said property, took an option from the defendant Maldonado, and under said option have purchased all the right, title, and interest of said Maldonado in and to said property; that they did not, within one year after the date of said agreement, nor have they at any time since, paid plaintiffs the purchase price named in the agreement, nor any part thereof, except the said sum of five hundred dollars; that, notwithstanding their failure to complete the purchase of said mining claims, they have remained in possession of said property, and have extracted large quantities of rich and valuable ore therefrom, and have refused to recognize or to carry out the agreement expressed in said contract, and have ignored the same and plaintiffs' rights under the same; that said plaintiffs did not know that the said defendants had removed the said monuments, or that they had reset them in another and different direction, and did not know that they had denounced locations on said Cerro Prieto, Nogales, Grant, and Eliza mining claims, and acquired title to the same, until after the expiration of the year provided for in the said option and agreement; that immediately upon discovering the facts of said fraudulent conduct and acts they demanded from the said defendants the possession of their said property and an accounting for the ore taken therefrom; that the said defendants refused to deliver up the possession or to make said accounting. Plaintiffs pray that defendants be declared their trustees of an undivided three-fourths interest in and to the property covered by the Margarita and Enterprise mining claims as originally located, and that the defendants be required to convey to plaintiffs the said three-fourths interest in said claims; that the defendants be enjoined from selling, encumbering,

or in any manner disposing of said property; and that they be granted such other and further relief as they may show themselves entitled to in equity. Service was had upon the defendants W. F. and H. K. Chenoweth and the Nogales Copper Company. The defendants served appeared and answered to the complaint. They filed a general demurrer to the complaint upon the grounds,—1. That the court had no jurisdiction of the subject-matter of the action; and 2. That the complaint does not state facts sufficient to constitute a cause of action. Upon the hearing the court sustained the general demurrer, and, upon the plaintiffs declining to amend, dismissed the complaint. From the order sustaining the demurrer and from the judgment of dismissal plaintiffs have brought this appeal.

The demurrer presented two questions: 1. Did the court have jurisdiction to grant any relief to plaintiffs notwithstanding the fact that the subject-matter of this relief is property situated in Mexico? 2. If the court had jurisdiction, did the facts stated in the complaint entitle the plaintiffs to any such relief?

It is a settled doctrine that a court of equity, having acquired jurisdiction over the person of the defendant, has jurisdiction to enter any decree which may concern or affect lands situated in a foreign state to the same extent and as fully as though these were situated within the state where the court has its *situs.* "Where the subject-matter is situated within another state or country, but the parties are within the jurisdiction of the court, any suit may be maintained and remedy granted which directly affect and operate upon the person of the defendant, and not upon the subject-matter, although the subject-matter is referred to in the decree, and the defendant is ordered to do or to refrain from certain acts toward it, and is thus ultimately but indirectly affected by the relief granted. As examples of this rule, suits for specific performance of contracts, for the enforcement of express or implied trusts, for relief on the ground of fraud, actual or constructive, for the final accounting and settlement of a partnership, and the like, may be brought in any state where jursdiction of defendant's person is obtained, although the land or other subject-matter is situated in another state, or even in a foreign country." Pomeroy's Equity

Jurisprudence, sec. 1318.   Whether or not the defendants, having obtained possession of plaintiffs' property under the agreement to purchase, were in such relation to the plaintiffs that they could not acquire any adverse title and hold the property thereafter as against plaintiffs by virtue of such adverse title, we are clearly of the opinion that they could not, by an act of actual fraud, made possible by reason of the possession thus obtained, obtain title and hold the same adversely to plaintiffs. The facts stated in the complaint make out a case of the grossest fraud and misconduct on the part of the defendants alleged to have gone into possession of the property under the agreement.   It can make no difference that this agreement was not signed by them.   It was accepted and ratified by their payment of the five hundred dollars and their going into possession under it.   To permit them to enjoy the fruits of their misconduct would be shocking to equity and good conscience. In such cases equity can and does afford relief.   "In general, whenever the legal title to property, real or personal, has been obtained through actual fraud, misrepresentations, concealments, or other undue influence, duress, taking advantage of one's weakness or necessities, or through any other similar means, or through any other similar circumstances which render it unconscientious for the holder of the legal title to retain and enjoy the beneficial interest, equity impresses a constructive trust on the property thus acquired in favor of the one who is truly and equitably entitled to the same."   Pomeroy's Equity Jurisprudence, sec. 1053.   "If one party procures the legal title to property from another by fraud, misrepresentation, or concealment, . . . equity will convert such party thus obtaining such property into a trustee. . . . And this trust it will fasten upon the property in the hands of the offending party, and will convert him into a trustee of the legal title, and will order him to hold it, or to execute the trust in   such manner as to protect the rights of the defrauded party who is the beneficial owner."   Perry on Trusts, sec. 166.   "The remedy which equity gives to the defrauded person is most extensive.   It reaches all those who are actually concerned in the fraud, all who directly and knowingly participated in its fruits, and all those who derive title from them voluntarily or with notice."   Pomeroy's Equity Jurisprudence, sec. 918.   We hold that the court had jurisdiction to grant

the relief prayed for, and that the complaint stated facts entitling the plaintiff to such relief, and therefore that the court erred in sustaining the general demurrer.

The judgment will be reversed and the cause remanded for further proceedings in consonance with this opinion.

KENT, C. J., and DOAN, J., concur.