[Civil No. 1034.   Filed March 27, 1908.]

[95 Pac. 182.]

MRS. F. L. BUTTERFIELD and CHARLES DOUGHERTY, Plaintiffs in Error, v. THE NOGALES COPPER COMPANY, a Corporation, THE CERRO PRIETO MINING COMPANY, H. K. CHENOWETH, W. Z. STEWART, THE BANCO DEL ORO MINING COMPANY, THE BLACK MOUNTAIN MINING COMPANY, WILLIAM BRACE, Trustee, and PAUL BROWN, Trustee, Defendants in Error.

1. VENDOR AND PURCHASER—TITLE OF VENDOR—RIGHT OF PURCHASER TO DISPUTE.—The rule that a purchaser under a contract to purchase may not dispute his vendor's title, nor purchase and assert against him an adverse title, applies to land which the purchaser agreed to purchase, and which is the subject matter of the contract, but does not extend to land not within the agreement.

2. SAME.—Plaintiffs and a third person discovered and denounced under the laws of Mexico two mining claims, which were surveyed and monuments erected, and for which patents were issued.   There was a variance between the ground conveyed by the patents and the ground intended to be denounced.   Defendants contracted to pur-

chase the claims, and, on discovering the variance, denounced claims covering the territory intended to be included by plaintiffs and the third person in their claims. .Defendants were not guilty of actual fraud. *Held,* that defendants were not, because of the contract of purchase, estopped from acquiring title to the property adversely to plaintiffs, and equity could not impress on the property a trust in favor of plaintiffs.

3. APPEAL—FINDINGS—CONCLUSIVENESS.—A finding will not be disturbed where there is substantial evidence to support it.

4. VENDOR AND PURCHASER—CONTRACTS—POSSESSION BY PURCHASER.— Where no actual possession was taken by a purchaser in a contract to purchase mining claims not described by metes and bounds, the purchaser was not in constructive possession of the ground claimed by the vendor under his original location, and not included within the patents to the claims, as one may not be constructively in possession of property not falling within the description of some muniment of title held by him.

5. TRUSTS—CONSTRUCTIVE TRUST—EVIDENCE.—In a suit by a vendor of mining claims, claiming ground under his location not included in the patent of the claim, against the purchaser, to impress on the property within the location and outside of the patent a trust in his favor, evidence *held* to justify a finding that the purchaser was not guilty of fraud, and did not take possession under the contract of purchase of the ground as located, defeating a right to relief.

WRIT OF ERROR to District Court of the Second Judicial District, in and for the County of Santa Cruz. Fletcher M. Doan, Judge. Affirmed except as to personal judgment against defendant Chenoweth. (See 11 Ariz. 315, 94 Pac. 1131.)

For former opinion, see 9 Ariz. 212, 80 Pac. 345.

The facts are stated in the opinion.

Theodore H. Thomas, and Selim M. Franklin, for Plaintiffs in Error.

Where the defendant under a contract to purchase of plaintiff obtained possession of a mining claim in Mexico which had been denounced by plaintiff under the laws of Mexico, and removed the monuments set up by plaintiff and set them in another direction, so as to exclude a large vein of ore, and then located a claim himself where plaintiff's had been, equity had jurisdiction to declare defendant a trustee of the property as originally located, to require defendant to convey such

property, and to enjoin defendant from selling or encumbering the property. *Butterfield et al.* v. *Nogales Copper Co. et al.,* 9 Ariz. 212, 80 Pac. 345. The foregoing is the law of this territory and remains the law until reversed by this court. The remedy which equity gives to defrauded persons is most extensive. It reaches not only to the perpetrator of the fraud, and all those who derive title from them, but also to those persons among whom he may have parceled out the fruits of his fraud. 2 Pomeroy's Equity Jurisprudence, sec. 918; *Michoud* v. *Girod,* 4 How. (U. S.) 503, 11 L. Ed. 1076; *Phalen* v. *Clark,* 19 Conn. 421, 50 Am. Dec. 253; *Stacks* v. *Van Leonard,* 8 Ga. 511; *Martin* v. *Martin,* 35 Ala. 560; *Smith* v. *Fly,* 24 Tex. 345, 76 Am. Dec. 109; *Relf* v. *Eberly,* 23 Iowa, 467; *Cock* v. *Van Etten,* 12 Minn. 522. "Where one party wrongfully obtains the legal title to land which in equity and good conscience belongs to another, whether he acts in good faith or otherwise, he will be charged in equity as constructive trustee of the equitable owner." *South End Min. Co.* v. *Tinney,* 22 Nev. 19, 35 Pac. 89; *Mills et al.* v. *Hart et al.,* 24 Colo. 505, 65 Am. St. Rep. 241, 52 Pac. 680; *Turner* v. *Sawyer,* 150 U. S. 578, 14 Sup. Ct. 192, 37 L. Ed. 1189; *Brundy* v. *Mayfield,* 15 Mont. 201, 38 Pac. 1067; *Moore* v. *Robbins,* 96 U. S. 530, 24 L. Ed. 848; *St. Louis S. Co.* v. *Kemp,* 104 U. S. 637, 26 L. Ed. 875. A person coming into possession of lands under the agreement or license of another cannot be permitted to deny the title of the latter, even if he had valid title at the time he entered the land under the contract of purchase entered into by the other party. 2 Herman on Estoppel and Res Judicata, sec. 864; *Jackson* v. *Ayers,* 14 Johns. (N. Y.) 224; *Winnard* v. *Robbins,* 3 Humph. (Tenn.) 614; *Russell* v. *Irwin,* 38 Ala. 44; *Jackson* v. *Spear,* 7 Wend. (N. Y.) 401; *Potts* v. *Coleman,* 67 Ala. 221. Where there is a variation between the courses called for in the plats and field-notes, and the monuments on the ground, it is a general rule that the monuments control. *Cullacott* v. *Cash G. & S. M. Co.,* 8 Colo. 179, 6 Pac. 211, 15 Morr. Min. Rep. 392; *Book* v. *Justice Min. Co.,* 58 Fed. 106, 17 Morr. Min. Rep. 617; *Stonewall etc. Co.* v. *Peyton,* 39 Fla. 726, 23 South. 440; *Lodge* v. *Barnett,* 46 Pa. 486; *Sennott* v. *Jewett,* 33 Land Dec. 91; Tyler's Laws of Boundaries, p. 285.

Notice to the agent of a corporation; if such notice comes to him while he is acting for the principal in the course of the very transaction which becomes the subject of the suit, is notice to the principal. "If an officer or agent acting within the general scope of his powers acquires knowledge of a particular fact while committing a fraud upon a third person in a matter pertaining to the business of the corporation, the corporation will be imputable with such knowledge although such knowledge may have been acquired by the officer or agent in his private capacity; and the corporation will be held to be a party to such unlawful act." *Hart* v. *Farmers' Bank,* 33 Vt. 252; 10 Cyc. 1055; *Harrington* v. *United States,* 11 Wall. 356, 20 L. Ed. 167; *Tagg* v. *Tennessee Nat. Bank,* 9 Heisk. (Tenn.) 479; *Patton* v. *Merchants' etc. Bank,* 40 N. H. 375; *Hovey* v. *Blanchard,* 13 N. H. 145; *Bank of United States* v. *Davis,* 2 Hill (N. Y.), 451; *Fulton Bank* v. *New York etc. Canal Co.,* 4 Paige (N. Y.), 127. "The general rule makes the principal liable for such wrong of the agent as is committed in the course of his employment and for the benefit of the principal and this is so, although no express command or privity is proven." *Fishkill Sav. Inst.* v. *Fishkill Bank,* 80 N. Y. 162, 36 Am. Rep. 595.

Eugene S. Ives, S. L. Pattee, and S. V. McClure, for Defendants in Error.

One who buys property from an innocent *bona fide* purchaser is protected by the good faith and innocence of his grantor, although he may himself have notice of antecedent defects or equities that would have defeated his title if he had been the first purchaser. *Trull* v. *Bigelow,* 16 Mass. 406, 8 Am. Dec. 144; *Glidden* v. *Hunt,* 24 Pick. 221; *Boynton* v. *Rees,* 8 Pick. 329, 19 Am. Dec. 326; *Funkhouser* v. *Lay,* 78 Mo. 458; *Wood* v. *Chapin,* 13 N. Y. 509, 67 Am. Dec. 62; 2 Pomeroy's Equity Jurisprudence, 3d ed., sec. 754, p. 1344. "The knowledge acquired by the officers or agents of a corporation while not acting for the corporation, but while acting for themselves, is not imputable to the corporation." 10 Cyc. 1063; *Innerarity* v. *Merchants' Bank,* 139 Mass. 332, 52 Am. Rep. 710, 1 N. E. 282; *Winchester* v. *Baltimore etc. R. R. Co.,* 4 Md. 231.

SLOAN, J.—This case was before us at the January, 1905, term on appeal from a judgment of the lower court sustaining a demurrer and dismissing the action upon the ground that the district court was without jurisdiction to grant the relief prayed for, for the reason that the subject matter of this relief was mining property situated in Mexico. We reversed the judgment of the court below, and remanded the case for further proceedings. 9 Ariz. 212, 80 Pac. 345. The complaint in the action was amended by the plaintiffs by the bringing in of additional parties defendant, and by adding certain allegations with respect to the acquisition by said new parties of interests in the Mexican mines upon which the plaintiffs sought to impose the trust. In essentials the cause of action remains the same as in the original complaint. A trial upon the merits was had, and a personal judgment was rendered against the defendant W. F. Chenoweth. Judgment for the remaining defendants was entered, and the complaint was dismissed as to them. The defendant W. F. Chenoweth appealed from this judgment, and this appeal has been before us at this term.

Plaintiffs Mrs. F. L. Butterfield and Charles Dougherty have sued out this writ of error to review the general judgment independent of the appeal of Chenoweth. The errors assigned by plaintiffs in error relate almost wholly to the sufficiency of the evidence to sustain the findings of the court, and the insufficiency of the latter to sustain the judgment.

The court found the facts substantially as follows: That in May, 1898, the plaintiffs Mrs. F. L. Butterfield, Charles Dougherty, and one Manuel M. Maldonado discovered and denounced under the laws of Mexico two mining claims, one called the "Interprice" and the other called the "Margarita," the former being the northern extension, and the latter the southern extension, of the Zaragoza mining claim theretofore denounced by said Maldonado, and more particularly described as situated in the jurisdiction of the municipality of Cucurpe, district of Magdalena, state of Sonora, republic of Mexico; that immediately upon denouncing said mining claims said parties made application to the proper officers of the Mexican government for a survey and patent for the same; that in pursuance of said application a survey was made in June, 1898, of the said Zaragoza claim and of the

said extensions thereof, and monuments erected by the surveyor making said survey at the corners of each of said claims, and that said survey of said three claims was made at one and the same time; that at the time of the discovery and location of said mining claims there was a large and strong vein of mineral cropping out in different places above the surface of the ground within the claims so denounced; that it was the purpose and intent of the plaintiffs and of said Maldonado to denounce the ground embracing this vein in a course from the initial corner monument of the Zaragoza claim approximately north twelve degrees west; that in June, 1899, letters patent were issued by the Mexican government conveying the Zaragoza mine to said Maldonado and others, and conveying the said Interprice and Margarita mining claims to plaintiff and said Maldonado in the proportion of an undivided one-third interest to each; that the said letters patent were received by said Maldonado and retained by him until delivered to defendant W. F. Chenoweth, as hereinafter set forth; that there is a variance between the ground conveyed by said letters patent and the ground intended to be denounced by Maldonado and the plaintiffs; that according to the course set forth in said letters patent the Zaragoza claim lay across instead of alongside the vein, and the said Interprice, as described in said letters patent, did not take in or cover any of said vein, but lay in an entirely different locality; that said variance between the said courses as called for and set forth in the patents, and the ground intended to be denounced, was not known to plaintiffs or either of them until long afterward; that prior to the issuance of said patents, and subsequent to said survey, the plaintiffs, to wit, in July, 1898, visited the property with defendant Maldonado, and that Maldonado then pointed out to them the monuments on the ground purporting to mark the corners of said mining claims; that said monuments were then in place, and were believed by plaintiffs to correctly define the boundaries and corners of said claims and to have been erected by the official surveyor at the time of the survey for patent, and that said Maldonado so informed them; that in October, 1899, defendants W. F. Chenoweth, H. K. Chenoweth, and R. N. McPherson entered into a copartnership agreement, by the terms of which McPherson was to find a mining property which the

Chenoweths were to develop and each of said copartners to have a one-third interest therein; that in pursuance of said agreement in October, 1899, McPherson examined the Zaragoza claim and was shown by Maldonado the monuments defining the boundaries thereof, and that said vein ran lengthwise through the center of said claim as so monumented; that at that time said McPherson obtained a bond on the Zaragoza mine from said Maldonado in the name of W. P. Chenoweth and H. K. Chenoweth; that the latter thereupon advanced money to McPherson, who took charge of the same, and proceeded to work and develop the same; that at about the same time said W. F. Chenoweth entered into a purchase agreement with said Maldonado for his one-third interest in said Margarita and Interprice mining claims, and received from the latter the letters patent to said mining claims; that on the fifteenth day of October, 1899, said W. F. Chenoweth entered into an agreement with the plaintiffs for the purchase of their undivided two-thirds interest in the Interprice and Margarita claims, in which he agreed to pay $500 in cash and the further sum of $14,500 within one year from the date thereof, and to pay all government taxes on the property in advance "during the life of this option" and furnish a receipt for the same, and in which it was agreed that upon the payment of the last-mentioned sum at any time within the period of one year the plaintiffs were to make and deliver to said Chenoweth a deed to the property; that at the time of the execution of this agreement said W. F. Chenoweth had not met either of the plaintiffs, nor had he seen the property, and did not for more than a year thereafter meet said plaintiffs, nor for a considerable time thereafter visit said property; that subsequently said W. F. Chenoweth conveyed said Zaragoza mine to a corporation organized under the laws of Arizona named the "Nogales Mining Company," the principal owners of the stock of which were W. F. Chenoweth, H. K. Chenoweth, R. A. McPherson, and one Jesse R. Grant, each of said four persons owning substantially one-fourth of the stock of said company; that neither said Grant nor McPherson or H. K. Chenoweth at any time had any interest in said Interprice and Margarita claims, or in said purchase contract between W. F. Chenoweth and the plaintiffs; that said Nogales Mining Company entered into possession of the

Zaragoza claim, and did certain development work on the same and upon certain territory it believed was embraced within its boundaries, but which as a matter of fact was without the boundaries of said claim as patented, but that neither the said Nogales Mining Company nor any of the defendants W. F. Chenoweth, H. K. Chenoweth, Jesse R. Grant, or R. A. McPherson at any time entered into possession of or did any work upon any territory covered by either the Margarita or Interprice claims, or of any territory which would have been covered by said claims had the Zaragoza claim been surveyed so as to cover the vein as intended by the plaintiffs and Maldonado, and as indicated by the monuments shown to plaintiffs by Maldonado in July, 1898, as aforesaid; that subsequent to the issuance of said patents on the third day of November, 1899, one Romirez denounced a claim called the "Ocampo," which covered a large portion of the territory which had been intended by plaintiffs to have been covered by the Interprice claim, and a patent thereafterward was issued by the republic of Mexico to said Romirez for said Ocampo claim; that subsequent to the denouncement of the Ocampo claim defendants H. K. Chenoweth and Jesse R. Grant discovered that the Zaragoza claim, as patented, did not cover the vein as had been represented by said Maldonado, and as indicated by the monuments on the ground pointed out to them by the said Maldonado, and that a large portion of the work that had been done, supposedly on the Zaragoza claim, was on vacant and unappropriated public domain; that thereafter, in January or February, 1900, said Grant and Chenoweth denounced four claims called, respectively the "Nogales," "Cerro Prieto," "Eliza," and "Grant," which covered the territory which had been intended by plaintiffs to have been included within the Interprice claim, and which covered the ground denounced by Romirez under the said Ocampo claim; that said locations were, in March, 1900, conveyed by said Grant and Chenoweth to a corporation organized under the laws of Mexico called the "Cerro Prieto Mining Company," and which corporation was made one of the defendants; that on the nineteenth day of April, 1900, W. F. Chenoweth denounced a claim called the "Santiago," and on the twenty-third day of July, 1900, a claim called the "Enrique," which included within their boundaries part

of the mineral vein intended by the plaintiffs to have been covered by the Interprice claim; that in August, 1900, said W. F. Chenoweth conveyed said Santiago and Enrique claims to the said Cerro Prieto Mining Company, and that in August, 1904, he conveyed to one W. Z. Stewart, one of the defendants, the title to the Ocampo claim, which he had purchased from said Romirez; that in November, 1900, said W. F. Chenoweth notified the plaintiffs that he did not desire to purchase the said Margarita and Interprice claims for the reason that they were, in his opinion, valueless; that prior to said time said Chenoweth had paid the taxes due on said claims to the Mexican government; that neither said W. F. Chenoweth nor any of the defendants advised or notified plaintiffs or either of them of the aforesaid variance between the courses of the survey as set forth in the patent papers to the Margarita and Interprice claims and the monuments pointed out to them by Maldonado as indicating the location of said mining claims upon the ground relative to the said mineral vein, and that the plaintiffs were in ignorance of said variance until a long time thereafter; that neither the said W. F. Chenoweth, H. K. Chenoweth, Jesse R. Grant, R. A. McPherson, the Cerro Prieto Mining Company, nor the Nogales Mining Company, or any or either of them, nor anyone acting in behalf of them, or any or either of them, at any time removed any monument or monuments which had been set up upon the Margarita and Interprice claims, or either of them, nor did said persons, or any or either of them, at any time do or perpetrate any fraud upon the plaintiffs or either of them, or do or procure the same to be done any act tending to deprive the plaintiffs or either of them of their title to any territory whatever in the said district; that in the summer of 1901 the plaintiff Mrs. F. L. Butterfield first learned of the variance between the letters patent and the ground intended by her to be included within the boundaries of the Interprice and Margarita claims, and that the ground so intended to be located and denounced had been denounced and located by Romirez, Grant, Chenoweth, and others, and was claimed by the said Cerro Prieto Mining Company; that thereupon she began proceedings, first in Mexico, and subsequently in the United States, to protect such rights as she might have in the premises, and has continued to assert her

said rights ever since; and that therefore she has not been guilty of laches in bringing this action.

It is further found that through various transactions the title to the property in question became vested in the Banco Del Oro Mining Company, a Mexican corporation, as a holding company for the Black Mountain Mining Company, an Arizona corporation, and both of said corporations have been made parties defendant by the amendment to the original complaint. The court further found that neither said W. F. Chenoweth nor his assigns paid, or offered to pay, the plaintiffs the $14,500 agreed to be paid under his contract of purchase with plaintiffs; that the latter have not offered to refund the $500 paid by said Chenoweth to them as the cash payment under said agreement, and have not offered or tendered any deed for said Interprice and Margarita claims, nor has Chenoweth made any demand for the same; that both parties to said agreement considered and treated it as an opinion.

As conclusions of law the court found: First, that the purchase agreement between W. F. Chenoweth and plaintiffs was not an option, but a contract to purchase, and still binding upon the parties thereto, and that under said agreement plaintiffs are entitled to recover from defendant W. F. Chenoweth the said sum of $14,500, with interest thereon at six per cent per annum from October 15, 1900, and their costs of suit, conditioned upon the plaintiffs executing the deed called for in said agreement; that plaintiffs were not entitled to recover anything from the other defendants in the action, and that the plaintiffs have had at no time any interest, legal or equitable, in any territory embraced within the Nogales, Cerro Prieto, Grant, Eliza, Enrique, or Santiago claims. In accordance with the conclusions of law so found by the court judgment was entered.

In passing upon the sufficiency of the original complaint as sustaining the jurisdiction of the court over the subject matter, we held, upon the first appeal, under the facts as pleaded, that the plaintiffs were entitled to relief if it be shown that under the agreement of purchase the defendants had gone into possession of the Interprice and Margarita mining claims, and, after taking possession of said claims, had fraudulently torn down and removed the original monuments marking the boundaries of said claims, and had set them up in another

direction for the purpose of changing the location of said claims so as to exclude therefrom the vein or ledge intended to be located, and, having thus changed the monuments erected by plaintiffs and the boundaries of said mining claims, had denounced, under the mining laws of Mexico, the ground thus excluded from the Margarita and Interprice mining claims, and for themselves had obtained title to the ground thus denounced. We characterized such acts as fraud and misconduct of the grossest sort, and said that to permit the defendants to enjoy the fruits of such misconduct would be shocking to equity and good conscience. It is evident, however, from a cursory consideration of the findings of the court that no such case is established thereby, as it is directly and specifically found that none of the defendants changed or caused to be changed the original location of the Interprice and Margarita claims, or did any act of actual fraud in obtaining title to any ground in dispute.

Eliminating from the case, as we must, if the findings be sustained, any question of actual fraud, the right of plaintiffs to impress a trust upon the land or any of the land included within the Cerro Prieto, Grant, Eliza, Nogales, Santiago, and Enrique claims must rest, if at all, upon the application to the facts in the case of the general doctrine that a vendee under a contract to purchase may not dispute his vendor's title, nor purchase and assert against his vendor an adverse title. This rule applies to land which the vendee has agreed to purchase, and which is the subject matter of his contract, and does not extend to land not within the agreement of the parties. Such must be the limitation of the doctrine, for the vendee is such only as to land he has agreed to buy, and as to the title to other property of his vendor he is a stranger. From a consideration of the text-writers and of the reported cases, the broadest statement which can be made as to the application of the doctrine is this: A vendee sustains to his vendor such a relation as that he may not dispute his vendor's title nor purchase and assert against him an adverse title, first, where the land affected by such adverse title is by fair and reasonable construction included within the terms of the contract; and, second, where the land affected is not in terms included or excluded from the contract, but possession is taken by the vendee by virtue of such contract under the assump-

XII Ariz.—5

tion of the parties that it is included therein. The findings do not furnish the basis of relief to the plaintiffs on the theory that Chenoweth or his assigns sustain such relation to the plaintiffs under the contract to purchase as would estop him or them from acquiring an independent title from the Mexican government and holding the property in dispute adversely to plaintiffs. No trust, therefore, of any kind under the facts as found should in equity be impressed upon the property in dispute in favor of the plaintiffs, and the trial court was, under such findings of fact, right in denying such relief.

It is argued by counsel for plaintiffs in error, first, that the evidence does not sustain the findings, but does sustain the allegations of the complaint, and does make out a case of fraud on the part of the Chenoweths, McPherson, and Grant in this, that it establishes that the Zaragoza, Margarita and Interprice claims, as originally monumented and denounced, covered and included the vein of mineral, and that these monuments were subsequently removed or destroyed presumptively by said defendants; second, that advantage was taken by said defendants of their discovery of the variance between the description of the Margarita and the Interprice claims contained in the letters patent and the original locations, through their possession of the claims under the agreement to purchase, to denounce and obtain title to the ground in dispute.

As to the first contention, an examination of the evidence discloses that after the original denouncement by Maldonado of the Saragoza, Margarita, and Interprice claims there were monuments along the course of the vein and on each side of it. It was admitted by the Chenoweths and by McPherson that they saw these monuments before the ground in controversy was located, and believed them to mark the boundaries of the first-named claims. The Chenoweths, McPherson and Grant each denied having removed or destroyed, or caused to be removed or destroyed, any of these monuments. McPherson testified that under instructions from the Chenoweths, after the discovery of the variance between the patents and the assumed location of the Margarita and Interprice claims, he erected new monuments to conform to the location of the claims as made in the patents. The inference that might

be drawn from the latter fact is all that may be said to sustain the charge of the removal or destruction of the original monuments by the Chenoweths and their codefendants, or by any of them. Besides this, inasmuch as the patents had been issued before the latter had gone upon the ground, or had done anything in relation thereto, any motive on their part which would lead them to remove or destroy the original monuments is not readily apparent. Under our well-settled rule that a finding of fact will not be disturbed where there is substantial evidence to support it, the finding in this behalf must be sustained.

Upon the question as to whether the evidence sustains the findings that no possession was taken by W. F. Chenoweth or by any of his associates or assigns of the Margarita and Interprice claims under the agreement to purchase, we find that the testimony of W. F. Chenoweth sustains the finding, to the extent, at least, that no actual possession was taken by him under said agreement. Furthermore, he testified that none of the other defendants at any time acquired any interest in said claims, or in the agreement to purchase, and that the latter was taken in his own name, and for his individual interest. An inspection of the record casts some doubt upon the truthfulness of the latter statement, for it seems clear from the record that H. K. Chenoweth and R. A. McPherson understood that the purchase agreement was made for the benefit of a copartnership entered into prior thereto between them and W. F. Chenoweth. Still it was within the province of the trial court to determine this question of fact, and, as the evidence at best is conflicting, we may not disturb the finding. If no actual possession was taken by Chenoweth or by any of his codefendants under the agreement to purchase, certainly it may not be said that Chenoweth or any of his codefendants were ever in constructive possession of the ground claimed by plaintiffs under their original location, and not included within the patents to the Margarita and Interprice claims. The agreement to purchase contained no description by metes and bounds, and, as one may not be constructively in possession of property which does not fall within the description of some muniment of title held by him, the case of plaintiffs in this regard must rest upon the actual possession of the ground in conflict by said defendants.

Regarding the evidence in its broadest aspect, and most favorably for the plaintiffs, it may appear as a proposition of morals that Chenoweth and those of his codefendants who were interested with him in the contract of purchase were guilty of bad faith in failing to notify the plaintiffs promptly of their discovery of the variance between the patent papers and the assumed original locations of the Margarita and Interprice claims. It is quite another thing, however, to say that it was their legal duty arising from the contractual relations existing between the parties to the contract of purchase so to do. If, as a matter of fact, such variance was not due to any act of theirs, and they were not in the actual or constructive possession of the land in controversy under said contract of purchase, we are aware of no legal or equitable principle which would make it their duty to locate the ground for the benefit of the plaintiffs, or otherwise to preserve the same for the benefit of plaintiffs. The circumstances testified to by plaintiffs, as well as by W. F. Chenoweth, connected with the execution of the agreement to purchase, fail to establish any relation of trust or confidence between W. F. Chenoweth and plaintiffs other than that of a mere vendee. At the time of the agreement none of the parties to the same knew anything of the true location of the Margarita or Interprice claims either as originally monumented or as subsequently patented. No representations were made by any of the parties in relation thereto. Under the testimony no relief could have been had by Chenoweth from any obligation he may have been under by the terms of the contract on the ground of mistake as to the true location of the Margarita and Interprice claims. An examination of the whole evidence has shown us that the findings are sufficiently sustained in these respects, and support the conclusion of law made by the court that no trust can be impressed upon the property in dispute in favor of plaintiffs. This result renders unnecessary an examination as to the correctness of the findings in other respects. The same is true of the errors assigned relating to the admission of certain evidence, inasmuch as this evidence related to the subject of notice of the rights of plaintiffs to the present holders of the legal title to the mining ground in question.

The personal judgment against W. F. Chenoweth is not sought to be reviewed in this proceeding; and, as an appeal

has been taken by Chenoweth and is now pending from said personal judgment, the general judgment will be affirmed save and except that part of it pertaining to said personal judgment against W. F. Chenoweth, which will stand, unless reversed or modified upon his appeal.

KENT, C. J., and CAMPBELL, J., concur.

NAVE, J., being disqualified in this case, took no part in its consideration or determination.