DECISION.
In 1984, appellee Robert D. Hodary, now deceased, and appellant Robert Chancey entered into a partnership agreement to purchase, own, develop, and sell 500 acres of land located in Tennessee. In contemplation of the participation of investors, Hodary, Chancey, and other investors entered into a trust agreement in Ohio that provided that Hodary, Chancey, and Leo Breslin would hold the title to the Tennessee property in trust for the benefit of the equitable owners, the majority of whom resided in Ohio. The trustees were also beneficiaries. Subsequently the property went into foreclosure and was ultimately purchased by Hodary, as trustee.
Hodary filed a two-count complaint against Chancey in 1989. The complaint alleged that Chancey, by making fraudulent representations about the value of the property, had induced Hodary to enter into the partnership agreement. It also alleged that Hodary and the other investors had requested from Chancey information about loan payments, receipts, offers for the property, and negotiations, which he had failed to provide.
Hodary also claimed that Chancey had knowingly violated the partnership agreement; failed to make timely loan payments, and failed to make his proportional contribution to debts and expenses pursuant to the partnership agreement. Consequently, Hodary had to borrow $100,000 to make the loan payment, the loan was accelerated, and the property went into foreclosure. In his complaint, Hodary sought compensatory damages, punitive damages, and a declaration terminating Chancey's participation in the partnership and/or any future profits from the partnership.
Chancey filed an answer pro se in which he denied most allegations other than the fact that a partnership agreement had been established, and that the trust agreement had been entered into in Ohio, and he also asserted that Tennessee was the proper "venue" concerning the partnership agreement.
Chancey failed to appear for two scheduled depositions. The trial court granted Hodary's motion to compel discovery and set a hearing date for sanctions. Chancey received notice of the hearing via certified mail, but failed to appear. The trial court issued an order denying Chancey the opportunity to testify in the action against him, striking his answer, and entering a default judgment against him. The trial court scheduled another hearing on the issue of damages. Chancey received notice via certified mail of that hearing as well, but failed to appear. Following the hearing, the trial court awarded Hodary compensatory and punitive damages, and declared that Chancey's participation in the partnership and/or any future profits from the partnership was terminated.
The case was later reopened by leave of court to allow Hodary to amend his complaint to request that Chancey be removed as a trustee based on the allegations in the first complaint. An amended judgment was entered October 5, 1995, reflecting Chancey's removal as trustee.
On January 2, 1998, Chancey filed a motion captioned as a "motion to set aside default judgment; and motion for relief from final judgment; and motion to dismiss," premised on the court's alleged lack of subject-matter jurisdiction and personal jurisdiction. The trial court denied his motion. It is from the entry denying Chancey's motion that he now appeals.
Chancey raises two assignments of error. In his first assignment, he claims that the trial court lacked subject-matter jurisdiction over the trust because the land was in Tennessee. In his second assignment, Chancey argues that the trial court lacked jurisdiction over him. We conclude that neither assignment has merit.
We address Chancey's second assignment first. In that assignment, Chancey argues that the trial court's striking of his answer as a discovery-violation sanction vitiated his voluntary submission to the trial court's jurisdiction. We do not believe that such a sanction may be used to negate the trial court's jurisdiction to initially impose the sanction. Personal jurisdiction, unlike subject-matter jurisdiction, may be waived.[1] "Civ.R. 12(B) requires that a defense of lack of personal jurisdiction must be presented either in the defendant's answer or by motion prior to the filing of defendant's answer."[2] Thus, if the defense is not asserted in a Civ.R. 12 motion, in a responsive pleading, or in a Civ.R. 15(A) amended responsive pleading, such defense is waived.[3]
Chancey filed an answer to the complaint. He did not contest the trial court's jurisdiction over him at that point, or in any motion prior to his answer, or in any amendment to his original answer. Thus, we conclude that Chancey waived the defense of lack of personal jurisdiction and implicitly consented to the trial court's jurisdiction over his person. We overrule Chancey's second assignment.
Chancey argues in his first assignment that the trial court had no subject-matter over the controversy because the trust property was located in Tennessee. Subject-matter jurisdiction connotes a "court's power to hear and decide a case on its merits."[4]
"Jurisdiction does not relate to the rights of the parties, but tothe power of the court."[5]
Chancey would have us adopt a rule of law precluding Ohio courts from ever exercising subject-matter jurisdiction over trust controversies involving property in other states. Such a holding would be contradictory to the conclusion reached by a majority of courts that "the courts of a state or country which has personal jurisdiction of the parties have jurisdiction of a suit involving the trust, although the trust property is located outside the court's territorial jurisdiction."[6] And such a rule would prevent any court in any state from ever dealing with a trust that had property in many states.
Courts of equity in one state "have jurisdiction to enforce a trust, and to compel the specific performance of a contract in relation to lands situate in another state, after having obtained jurisdiction of the persons of those upon whom the obligation rests * * *."[7] A court has the power, acting in personam, to determine the equities between the parties in realty and, if necessary, to compel parties to convey the land.[8] Its order cannot, however, operate to transfer the title of land located in another state. It can only bind "the consciences of those against whom it is rendered."[9]
In this case, the title to the land was initially vested in Hodary, Breslin, and Chancey, as trustees. The property was then foreclosed on and sold in 1986 at a public auction to Peninsula Estates, Inc. It was later purchased by Hodary, as trustee. Hodary's complaint did not relate to the land, but to the conduct of Chancey in relation to Hodary. It was Chancey's fraudulent representations and failure to provide information and to make payments on the installment loan that resulted in Hodary's efforts to terminate relations with Chancey, both as a trustee and as a partner.
We find instructive the conclusion reached by the Supreme Court of Wisconsin in 1903, when it was confronted with the argument that Wisconsin lacked subject-matter jurisdiction over a trust in land where the properties were located in Florida and Georgia. The court stated,
 The answer to [the claim of lack of subject-matter jurisdiction] is that the action was not in rem. It bore only upon the party defendant to require him to respond in personam to plaintiff. * * * "while a court of equity in one state may compel a conveyance of lands in another state by a decree in personam against the party who holds the title, it has no jurisdiction to itself transfer the title to such lands." In other words, a court of equity cannot exercise its jurisdiction in an action in rem when the res is in a foreign jurisdiction. This is not such a case.[10]
As the Ohio Supreme Court has explained, "an act in personam
[is] one done or directed against a specific person, while an actin rem [is] one done with reference to a specific thing, and so against whom it might concern, or `all the world.'"[11]
In our case, Hodary sought a declaration removing Chancey as trustee because of his fraudulent representations and refusal to provide information, and his failure to make the expenditures necessary to keep the property. These were acts in personam.
The fact that the res of the trust was property does not necessarily mean that this case was an action concerning real property. The complaint did not seek to recover real property or damages to real property. It was not an action to recover rents and profits, or one for use or occupation of real property. It did not seek to quiet title or to remove a cloud or encumberance. There was no attempt to foreclose a mortgage or other lien on the property. It did not allege waste or injury to the property. At the time of the complaint, Chancey was no longer a legal holder of the title. The property had been foreclosed on and purchased by Hodary, as trustee. (The trust agreement itself would not necessarily have required the appointment of a new trustee upon Chancey's removal-it stated that the death or resignation of a trustee vested power in the remaining trustees.) The action arose out of the partnership and trust agreement, Chancey's alleged fraud, and his failure to meet his end of the bargain. The primary purpose of the complaint was to remove Hodary from the partnership and trust agreement. The fact that the res of the trust happened to be land was incidental.
In other words,
"Where the subject-matter is situated within another state or country, but the parties are within the jurisdiction of the court, any suit may be maintained and remedy granted which directly affect and operate upon the person of the defendant, and not upon the subject-matter, although the subject-matter is referred to in the decree, and the defendant is ordered to do or to refrain from certain acts toward it, and it is thus ultimately but indirectly affected by the relief granted. As examples of this rule, suits for specific performance of contracts, for the enforcement of express or implied trusts, for relief on the ground of fraud, actual or constructive, for the final accounting and settlement of a partnership, and the like, may be brought in any state where jurisdiction of defendant's person is obtained, although the land or other subject-matter is situated in another state, or even in a foreign country." Pomeroy's Equity Jurisprudence Section 1318.[12]
We conclude, after examining the pleadings in their entirety to determine what rights were asserted and what relief was sought, that the action in this case was primarily a proceeding inpersonam, and not a proceeding in rem. Therefore, the trial court had subject-matter jurisdiction. Chancey's first assignment is overruled.
We affirm the trial court's judgment overruling Chancey's motion.
Judgment affirmed.
 Hildebrandt, P.J., and Shannon, J., concur.
Raymond E. Shannon, retired, of the First Appellate District, sitting by assignment.
[1] Civ.R. 12(H)(1).
[2] State Farm Fire Cas. Co. v. Kupanoff Imports, Inc. (1992),83 Ohio App.3d 278, 281, 614 N.E.2d 1072, 1074.
[3] Civ.R. 12(H)(1).
[4] State ex rel Tubbs Jones v. Suster (1998), 84 Ohio St.3d 70,75, 701 N.E.2d 1002, 1007.
[5] Id., quoting Executors of Long's Estate v. State (1926),21 Ohio App. 412, 415, 153 N.E. 225, 226.
[6] Annotation, Jurisdiction of Suit Involving Trust as Affected by Location of Res, Residence of Parties to Trust, Service, and Appearance (1951), 15 A.L.R.2d 610, 621.
[7] Burnley v. Stevenson (1873), 24 Ohio St. 474, 478.
[8] Id. at 478-479.
[9] Id.
[10] Gates v. Paul (Wis. 1903), 117 Wis. 170, 94 N.W. 55, 60.
[11] Cross v. Armstrong (1887), 44 Ohio St. 613, 624, 10 N.E. 160,164.
[12] Butterfield v. Nogales Copper Co. (Ariz.Terr. 1905), 9 Ariz. 212,80 P. 345, 347.