416 P.2d 564

**Pearline PORTER, Pauline P. Leonard and George C. Kemble, Appellants,**

**v.**

**Gladys E. PORTER, Appellee.**

**No. 7594 PR.**

Supreme Court of Arizona.

In Banc.

July 14, 1966.

Beer & Polley, Phoenix, for appellants Pearline Porter and Pauline P. Leonard.

Kramer, Roche, Burch & Streich and Charles L. Hardy, Phoenix, for appellant George C. Kemble.

W. Francis Wilson and Richard A. Wilson, Phoenix, for appellee, Gladys E. Porter.

BERNSTEIN, Vice Chief Justice.

Pursuant to 17 A.R.S. Rule 47(b), Rules of the Supreme Court and A.R.S. § 12–120.24, we granted a petition to review the decision of the Court of Appeals, Division 1, reported in 1 Ariz.App. 363, 403 P.2d 298.

The history of this protracted litigation is detailed in the Court of Appeals decision as well as Kemble v. Stanford, 86 Ariz. 392, 347 P.2d 28; Porter v. Stanford, 86 Ariz. 402, 347 P.2d 35, cert. den. 371 U.S. 829, 83 S.Ct. 23, 9 L.Ed.2d 66 and Kemble v. Porter, 88 Ariz. 417, 357 P.2d 155. We will merely highlight the pertinent facts. On May 14, 1959 Gladys E. Porter, appellee, obtained an Arizona judgment for separate maintenance after constructive service upon her husband Arnold Porter by publication and registered mail which he acknowledged. She had attached the Arizona Hotel in Phoenix when she filed her complaint which described the hotel as community property. The judgment imposed a lien on the hotel in excess of $25,000 for support payments of $3,000 monthly which were later reduced to $1,000 per month. On July 21, 1959 the trial court entered a judgment determining the arrearage due under the separate maintenance judgment and three days later Gladys obtained execution and levied upon the hotel to satisfy an amount over $31,500. The July 21, 1959 judgment was a final judgment. McClanahan v. Hawkins, 90 Ariz. 139, 367 P.2d 196. The sheriff's sale was held August 20th and all of Mr. Porter's interest in the hotel was sold to Gladys who received a sheriff's deed April 7, 1960. As a result of the sale and upon receipt of this deed, Gladys became the sole owner of any interest in the hotel which she and Arnold had theretofore held as community property as well as any interest which Arnold held as his separate property. A.R.S. § 25–342, subsec. B.

Eleven days after the Arizona separate maintenance judgment was entered, Arnold Porter sued Gladys for divorce in Idaho. She answered seeking full faith and credit for the Arizona judgment and participated

in the Idaho divorce proceedings. On December 28, 1960 nearly seventeen months after Gladys bought Arnold's interest in the Arizona Hotel at the sheriff's sale and nine months after she obtained the deed thereto, the Idaho court refused to give the Arizona judgment full faith and credit. Furthermore, that court found that the Arizona Hotel was owned by a partnership in which Gladys and Arnold had an interest as community property. Arnold Porter was awarded all community property interest in the partnership which owned the hotel and Gladys was given ten days to "execute and deliver unto (Arnold Porter) a transfer and conveyance of all right, title, interest and equity * * * that the defendant (Gladys) has in those properties known as the Arizona Hotel * * *." Pursuant to the court's command, Gladys executed quitclaim deeds and assignments of her interest in the hotel.

This appeal arises out of appellants' intervention in Gladys' separate maintenance action wherein appellants alleged that the Arizona Hotel was owned by a partnership in which they together with Arnold Porter had an interest. After the Idaho judgment was rendered, appellants filed supplemental complaints in intervention seeking full faith and credit for the Idaho court's judgment that the hotel was owned by a partnership and that Gladys had no further interest in the Arizona Hotel by virtue of the quitclaim deed, assignment and release of the Arizona judgment. U.S. Const. Art. IV, § 1; 28 U.S.C.A. § 1738. Trial was had on December 18, 1961 in the Superior Court of Maricopa County. Documentary evidence was introduced but there was no testimony. The trial court granted a directed verdict for Gladys and this appeal followed.

■ Certain facts must be emphasized to properly frame the problem before us. In Porter v. Stanford, supra, this court said:

"* * * It (the trial court) had jurisdiction of the parties (Gladys and Arnold) and of the subject matter of the litigation and jurisdiction to enter an order in such amount as it deemed proper for (Gladys and the children) support pendente lite."

* * * * * *

"* * * It also had authority not only to order the husband to pay such amount pendente lite but it also had authority to direct a receiver of the community property to do so."

* * * * * *

"* * * The presumption that it is community property (the Arizona Hotel) therefore obtains and will continue to prevail in favor of Gladys E. Porter until it is destroyed by evidence to the contrary." 86 Ariz. 406–407, 347 P.2d 40.

Arnold Porter has never attempted to introduce evidence rebutting the presumption. There is a presumption that real property owned by husband and wife is community property and nearly conclusive evidence is required to overcome the presumption which alone will support a judgment. Kennedy v. Kennedy, 93 Ariz. 252, 379 P.2d 966.

■ Payments for separate maintenance become vested when they become due and cannot be modified thereafter. McClanahan v. Hawkins, supra. A judgment based upon such payments is entitled to full faith and credit. Sistare v. Sistare, 218 U.S. 1, 30 S.Ct. 682, 54 L.Ed. 905.

■ No authority need be cited to support the validity of a separate maintenance judgment where a resident spouse attaches property in Arizona and serves the nonresident spouse by registered mail as provided in Rule 4(e), 16 A.R.S. Porter v. Duke, 34 Ariz. 217, 270 P. 625. The court has jurisdiction to determine the rights of the nonresident spouse in the attached property. 24 Am.Jur.2d Divorce and Separation, §§ 546, 935, 995. We have recognized the validity of a separate maintenance suit which based jurisdiction over a nonresident spouse upon the fact that community real property was attached in the state. White v. White, 83 Ariz. 305, 320 P.2d 702. Moreover, we have recognized that a lien in

favor of the wife may attach to the husband's share of community owned partnership property. Spector v. Spector, 94 Ariz. 175, 382 P.2d 659. In this regard, we note that partnership assets acquired during coverture are community property and belong to both spouses. Coe v. Winchester, 43 Ariz. 500, 33 P.2d 286. The sheriff may sell the attached property, whether separate or community, to satisfy a judgment for past due support payments and the non-resident spouse is bound by the sheriff's sale to the extent of his interest in the property. Pennington v. Fourth National Bank, 243 U.S. 269, 37 S.Ct. 282, 61 L.Ed. 713.

The above principles will be referred to as we analyze the problem before us. Stated most simply, the issue is whether the trial court erred in directing a verdict for Gladys based on the conclusion that appellants failed to prove the Arizona Hotel was owned by a partnership. Apart from the documentary evidence which we shall consider subsequently, appellants relied primarily upon the Idaho judgment. Hence, we must decide whether the Idaho judgment is entitled to full faith and credit. We think not. We note that appellants do not ask us to merely give full faith and credit to the Idaho judgment. Instead, we are asked to give it greater credit than the prior Arizona judgments. We do not think the full faith and credit clause requires such a conclusion.

■ In the first place, the Idaho court was obliged to give full faith and credit to the Arizona separate maintenance judgment and to the later judgment based upon the arrearage for support payments. Pursuant to these judgments, Gladys obtained all of Arnold's interest in the hotel which thereafter was her separate property. We pointed out above that as between Gladys and Arnold, there was adjudication that she owned his interest in the hotel and there was no community property interest in the hotel. That adjudication was entitled to full faith and credit in the Idaho trial court. American Exp. Co. v. Mullins, 212 U.S. 311, 29 S.Ct. 381, 53 L.Ed. 525. The Idaho

Supreme Court recognized that its trial court may have erred in refusing to grant full faith and credit to the Arizona judgments. Gladys appealed that part of the divorce decree which prohibited her from maintaining, instituting or prosecuting any action affecting the Arizona Hotel and the Idaho Supreme Court said the judgment was too broad because:

"* * * This enjoinder will prevent appellant from exercising any rights which she may have *outside the present action* and to all rights which may enure to her in the future by virtue of this decree or *otherwise*." Porter v. Porter, 84 Idaho 400, 373 P.2d 327, 332. (Emphasis supplied)

■ The Idaho judgment is fatally defective because it failed to give the prior valid Arizona judgments full faith and credit and, therefore, is not entitled to full faith and credit by this court. Reynolds v. Stockton, 140 U.S. 254, 11 S.Ct. 773, 35 L. Ed. 464; Dixon v. Dixon, 76 N.J.Eq. 364, 74 A. 995; Hanna v. Stedman, 230 N.Y. 326, 130 N.E. 566.

■ Secondly, the Idaho judgment is not entitled to full faith and credit because the Idaho court had no jurisdiction, power or authority in the divorce proceeding to enter an order distributing property which was Gladys' separate property and not community property. At the sheriff's sale, Gladys acquired all of Arnold's interest in the Arizona Hotel and it follows that the hotel was not community property thereafter. Idaho is a community property state and the court "divides" the community property only when it grants a divorce. Idaho Code § 32–712. The Supreme Court of Idaho has said that:

"* * * The court has the power under said section (32–712) to divide the *community property* between the parties, but has *no power or authority to award the wife's separate property, or any part of it, to the husband*." Heslip v. Heslip, 74 Idaho 368, 262 P.2d 999, 1002. (Emphasis supplied)

It is axiomatic that full faith and credit need not be given to the judgment of the Idaho court because it acted without jurisdiction. Estin v. Estin, 334 U.S. 541, 68 S.Ct. 1213, 92 L.Ed. 1561.

There is a third reason why the Idaho judgment is not entitled to full faith and credit. A foreign judgment will not be given greater effect than a domestic judgment on the same issue. This court has held that the Arizona Hotel was community property as between Gladys and Arnold by virtue of a strong presumption which was never overcome and has recognized that Gladys Porter could obtain Arnold's interest in the hotel as her separate property by purchasing it at the sheriff's sale to satisfy her judgment for support payments due her. The full faith and credit clause does not compel us to overrule our decision by recognizing the Idaho judgment were we to concede its validity. The United States Supreme Court has said that "The rule of primacy to the first final judgment is a necessary incident to the requirement of full faith and credit." Hanson v. Denckla, 357 U.S. 235, 256, 78 S.Ct. 1228, 1241, 2 L.Ed.2d 1283. The case of Hammell v. Britton, 19 Cal.2d 72, 119 P.2d 333 quotes with approval from Martin Bros. Box Co. v. Fritz, 228 Iowa 482, 292 N.W. 143 as follows:

" 'The full faith and credit clause requires the courts of one state to give to the judgment of a court of another the same effect that is accorded such judgment in the latter state. (citations omitted) Under such clause, since the Iowa judgment has been adjudicated to be valid in Iowa, the Indiana court should have enforced such judgment. It refused to do so. We know of no decision which would support the proposition that, if a judgment has been adjudicated to be valid and enforcible by a court in Iowa, but enforcement of such judgment is thereafter refused by a court in Indiana, the Iowa court must then follow the example of the Indiana court and also refuse to enforce such judgment.

We are unwilling to so construe the full faith and credit cause.' " 119 P.2d 339.

The Supreme Court of Nevada has said:

"Analysis demands the conclusion that (plaintiff) does not here ask us to merely accord full faith and credit to the Maryland decree. Instead, we are asked to give it greater credit and respect than the prior decree of our own State lawfully entered. Full faith and credit does not require, nor does it contemplate, such actions from us." Colby v. Colby, 78 Nev. 150, 369 P.2d 1019, 1023, Cert. denied 371 U.S. 888, 83 S.Ct. 186, 9 L.Ed.2d 122. Accord: Perry v. Perry, 51 Wash.2d 358, 318 P.2d 968; Astor v. Astor, Fla.App., 107 So.2d 201, cert. den. 120 So.2d 176; Atkinson v. Kettler, Tex.Civ.App., 372 S.W.2d 704 affd Sup., 383 S.W.2d 557.

It is argued by appellants that the Arizona judgments are entitled to full faith and credit as between Gladys and Arnold only. We determined their rights in the hotel but not the rights of appellants. It would follow that the Idaho court was not faced with a final judgment in the action between Gladys and appellants concerning ownership of the hotel and the Idaho judgment is not void for that reason. Hence, the Idaho judgment was the first decision on the ownership issue as between Gladys and appellants and must be given full faith and credit by this court. We do not agree.

If the Idaho trial court had given full faith and credit to the prior Arizona judgments or recognized that the hotel was not community property it could not have entertained appellants' intervention action. Ordinarily, rights to real property can be litigated in a divorce proceeding as an incident to the dissolution of the marriage and third persons claiming an interest in the property may intervene. Potter v. Potter, 35 Wash.2d 788, 215 P. 2d 704; Brust v. Brust, 181 Or. 307, 181 P.2d 632; Wharff v. Wharff, 244 Iowa 496, 56 N.W.2d 1; Anno.: 102 A.L.R. 814. However, the hotel property was not

involved in the Idaho divorce proceeding because any interest which the parties previously held as community property had become the separate property of Gladys. Rules 14 and 24 of the Idaho Rules of Civil Procedure deal with third party practice and intervention actions. Rule 14 allows either party to bring in others which was not the case here. Rule 24(a) allows intervention by right where, among other things, "the applicant is so situated as to be adversely affected by a distribution or other disposition of property which is in the custody or subject to the control or disposition of the court or an officer thereof." This rule is also inapplicable. The appellants who intervened in the Idaho divorce suit would not have been affected by a distribution of property because the court could only distribute community property. The hotel, in which appellants claimed an interest, was Gladys' separate property. Rule 24(b) allows permissive intervention where there is a common question of law or fact involved in the main suit and the intervenor's suit. The ownership of the Arizona Hotel was not at issue in the Idaho suit between Arnold and Gladys and that was the only issue appellants interjected into the intervention suit. It follows that there was no common question of law or fact. The Idaho trial court had no power or authority to entertain the intervention action and we need not give full faith and credit to its judgment. Estin v. Estin, supra.

■ Appellants further contend that Gladys consented to the jurisdiction of the Idaho court. It is irrelevant that Gladys and appellants may have litigated the ownership of the hotel in the Idaho court because "it is a universal rule of law that parties cannot, by consent, give a court jurisdiction of a subject matter of which it would not otherwise have jurisdiction, and a judgment rendered in such a case is not validated by the consent." Application of Duke H. Martin, 76 Idaho 179, 279 P.2d 873, 53 A.L.R.2d 582; 30A Am. Jur., Judgments, § 27. It is true that

Gladys filed an answer to the Idaho divorce complaint on July 10, 1959, alleging that the Arizona Hotel was community property which it was at that time although burdened with her lien for support payments. However, two weeks later the execution and sale took place and the hotel was no longer community property and became her separate property by reason of the sheriff's sale which fact must have been brought to the attention of the Idaho court.

■ There is a further reason why the Idaho judgment is not entitled to full faith and credit. Idaho had no power or authority and was completely without jurisdiction to establish or quiet or otherwise directly affect title to the Arizona Hotel property. Durfee v. Duke, 375 U.S. 106, 84 S.Ct. 242, 11 L.Ed.2d 186; Fall v. Eastin, 215 U.S. 1, 30 S.Ct. 3, 54 L.Ed. 65. Idaho has recognized this principle. Taylor v. Hulett, 15 Idaho 265, 97 P. 37, 19 L.R.A.,N.S., 535. It is clear that the Idaho trial court attempted to directly decide ownership and title of the Arizona Hotel. In its findings of fact it said:

"IX

"This court finds that the Arizona Hotel, * * * is owned by the Continental Hotels System, a co-partnership, * * *."

In its judgment and decree it said:

"It is further ORDERED, ADJUDGED AND DECREED that the Continental Hotels System, a co-partnership, * * * is the owner of the following described real and personal properties, to wit: (The Arizona Hotel)"

Pursuant to the finding and judgment, Gladys was ordered to execute within ten days the aforementioned quitclaim deeds and assignments of her interest in the hotel and if she failed to do so, "the clerk of this (Idaho) court is hereby empowered to execute and deliver such conveyance as are (sic) necessary to carry into force and effect said judgment."

Appellants argue that the Idaho court simply determined the rights and equities in the hotel property of the parties before it. They cite Kennedy v. Morrow, 77 Ariz. 152, 268 P.2d 326 and Butterfield v. The Nogales Copper Co., 9 Ariz. 212, 80 P. 345 for the principle that an equity court's decrees based upon in personam jurisdiction are valid though they concern or affect land out of the state. We have no quarrel with those decisions, but they are inapplicable to this case for several reasons. It is true that the Idaho court had jurisdiction over the parties and the subject matter of the divorce but it had no jurisdiction to order Gladys to convey her separate property. Heslip v. Heslip, supra. We have said:

"'* * * The court must have (a) jurisdiction of the subject matter of the case, (b) jurisdiction of the persons involved in the litigation, and (c) jurisdiction to render the particular judgment given. * * *'"

* * * * * *

. . "While this court has held that a divorce action is an action in equity, (citation omitted), yet the trial court may not assume a jurisdiction not given it by statute because divorce is primarily a statutory action and equity is invoked in aid of the execution of the statute. Section 27–808, A.C.A.1939, supra, does not include the wife's right to demand an inventory of the husband's separate property. Such authority not expressly given by statute cannot thus be assumed." Van Ness v. Superior Court, 69 Ariz. 362, 364, 365, 213 P.2d 899, 900.

Divorce actions where the court undertakes to divide community property both in and out of the forum must be carefully distinguished. We reemphasize the fact that at the sheriff's sale Gladys acquired as her separate property whatever interest Arnold had in the hotel to satisfy her judgment. Likewise, it is important to distinguish cases where, for example, one party sues another for breach of a contract to convey land situated in another state. Here, the appellants' action in Idaho was in the nature of a suit to quiet title to the Arizona Hotel and the court undertook to directly adjudicate title thereto. That conclusion becomes apparent when we ask the following question: would the Idaho court have ordered Gladys to execute the quitclaim deed if it had not *first* decided that the hotel was owned by a partnership or that it was community property? Obviously not. It determined in the divorce decree who had title to the property and *thereafter* ordered the parties to execute all conveyances necessary to carry out its judgment and decree.

Additional evidence that the Idaho court did not merely determine the rights of the parties before it is the fact that the partnership in which ownership of the hotel was found to be lodged was not a party before the court. Furthermore, the Uniform Partnership Act is in effect in Idaho so that a partnership can sue or be sued in its own name. Idaho Code, § 53–301 et seq., § 5–323. The Continental Hotels Systems partnership was not a party to the Idaho suit. Therefore the court was not merely adjudicating the rights of parties before it when it decided that the partnership owned the Arizona Hotel. That part of the Idaho judgment is void. Durfee v. Duke, supra; Fall v. Eastin, supra; Taylor v. Hulett, supra.

We must next consider the documentary evidence submitted by appellants at the trial below to determine whether they made out a prima facie case that the Arizona Hotel was owned by a partnership which would require that Gladys' motion for a directed verdict be denied. Figueroa v. Majors, 85 Ariz. 345, 338 P.2d 803. The evidence shows that on July 30, 1943 Gladys and Arnold, as husband and wife, acquired a warranty deed to the Arizona Hotel which was recorded August 13, 1943 creating a presumption of community property. There was an agreement dated September 21, 1943 which stated that Gladys and Arnold owned one-half interest in the hotel and R. E. Spaulding and his wife owned the

other one-half interest. The Spauldings conveyed their alleged interest to Arnold and Gladys by warranty deed dated June 30, 1948 and they were again presumed to own all of the Arizona Hotel as community property. There is a mortgage dated August 14, 1958 which recites that Gladys and Arnold own the hotel as husband and wife. There is a lease dated April 1, 1949 between Arnold Porter as lessor and a tenant of the hotel as lessee. There is a partnership agreement dated January 1, 1943—seven months before Gladys and Arnold acquired title to the hotel—between Gladys and Arnold, Andrew Rickett and his wife, and appellants Pearline Porter and Pauline Leonard. The agreement makes no reference to the Arizona Hotel. There is a lease dated February 21, 1956 between Arnold, Gladys, Pearline Porter and Pauline Leonard as copartners and lessors and a corporation as lessee to a portion of the Arizona Hotel. This was the only document admitted in evidence which suggests that the Arizona Hotel is owned by a partnership. The trial court concluded that this document, being unexplained, fell short of the "nearly conclusive" evidence required to overcome the presumption created by the warranty deeds of July 30, 1943 and June 30, 1948 that the hotel was the community property of Gladys and Arnold. Kennedy v. Kennedy, supra. Considering the entire record in the case, we will not disturb this finding. The other documents in evidence depended for their validity upon the trial court giving full faith and credit to the Idaho judgment. Since we have decided otherwise, the quitclaim deed, assignment and release of judgment were of no effect. Garren v. Rollis, 85 Idaho 86, 375 P.2d 994; 49 C.J.S. Judgments § 449.

Appellant Kemble concedes that "The crux of this case is the validity of the Idaho decree of divorce." In view of this decision denying full faith and credit to the Idaho judgment, and our affirmance of the trial court's directed verdict, the other assignments of error raised by appellants are moot. We have, however, considered them and find them to be without merit.

The opinion of the court of appeals is vacated and the judgment of the trial court is affirmed.

STRUCKMEYER, C. J., and LOCKWOOD, J., concur.

UDALL, Justice (dissenting):

We are confronted in this appeal with the constitutional question of whether the courts of the State of Arizona have refused to give full faith and credit to a sister state's judgment in compliance with Art. IV, § 1 of the Constitution of the United States and Art. 2, § 3 of the Constitution of Arizona A.R.S. My analysis of the facts and interpretation of the law requires a conclusion that the question must be answered in the affirmative.

I cannot agree with the result reached by the majority of this Court for the following specific reasons: (1) There was never a final judgment in this state, prior to the Idaho judgment, that determined ownership of the Arizona Hotel property on the merits of the controversy; therefore, the Idaho trial court did not have to give full faith and credit to a prior Arizona judgment; (2) Even assuming a valid Arizona judgment, the Idaho judgment was subsequent in time and therefore entitled to full faith and credit; (3) The appellee, Gladys Porter, waived her rights in the Arizona property by appearing in the Idaho action, and by subsequent acts of executing quit claim deeds, assignments and releases of her interest in the Arizona Hotel property; (4) The first final determination on the merits of any interest of the Porter sisters in the Arizona Hotel property was by the Idaho court and the sisters were proper parties, according to the Idaho court's construction of its own judicial rules, to intervene in the action in Idaho.

The Constitution of the United States requires each state to give full faith and credit to the judicial proceedings of every

other state. Article IV, § 1 of the Constitution of the United States provides as follows:

"Full Faith and Credit shall be given in each State to the public Acts, Records, and judicial Proceedings of every other State. And the Congress may by general Laws prescribe the Manner in which such Acts, Records and Proceedings shall be proved, and the Effect thereof."

In 28 U.S.C.A. § 1738, Congress has prescribed the manner in which these records may be proved and this statute reads in part as follows:

"The records and judicial proceedings of any court of any such State, Territory or Possession, or copies thereof, shall be proved or admitted in other courts within the United States and its Territories and Possessions by the attestation of the clerk and seal of the court annexed, if a seal exists, together with a certificate of a judge of the court that the said attestation is in proper form.

"Such Acts, records and judicial proceedings or copies thereof, so authenticated, shall have the same full faith and credit in every court within the United States and its Territories and Possessions as they have by law or usage in the courts of such State, Territory or Possession from which they are taken."

Thus, a judgment of a court of general jurisdiction of a sister state duly authenticated is prima facie evidence of the jurisdiction of the court to render it and of the rights which it purports to adjudicate. Barber v. Barber, 323 U.S. 77, 65 S.Ct. 137, 89 L.Ed. 82; Banco De Sonora v. Morales, 23 Ariz. 248, 203 P. 328.

The record in this case is clear that no court in Arizona, prior to this appeal, has decided, on the merits, that the Arizona Hotel is community property. In Porter v. Stanford, 86 Ariz. 402, 347 P.2d 35, cert. denied, 371 U.S. 829, 83 S.Ct. 23, 9 L.Ed.2d 66, this Court did not hold that title to the Arizona Hotel property had been determined by the Superior Court. In quashing the alternative writ of prohibition, we simply ruled that the Superior Court had acted within its jurisdiction in ordering the receiver of the property to make support payments to Gladys Porter, because a presumption that the property was community property obtained and would continue to prevail until destroyed by evidence to the contrary. This, of course, is fundamental community property law in this jurisdiction. The presumption is not conclusive, and if a party proves by clear, strong, satisfactory cogent and convincing evidence, at a trial on the issues, that property was held under a different form of ownership, the presumption is rebutted. Kingsbery v. Kingsbery, 93 Ariz. 217, 379 P.2d 893. The facts and circumstances in each case determine whether the presumption has been rebutted. In all cases, however, there must be a judicial determination of whether property is community. A mere allegation by one party that property is held under a form of ownership, an execution, and a sheriff's sale are certainly not sufficient to confirm a presumption.

As was stated in Porter v. Stanford, supra, by Justice Johnson in his dissent:

"It is further stated in the majority decision that '* * * The presumption that it (Arizona Hotel) is community property therefore obtains and will continue to prevail in favor of Gladys E. Porter until it is destroyed by evidence to the contrary.' I am definitely of the opinion that whatever presumption prevailed in favor of Gladys E. Porter that the hotel property was community property completely disappeared 'in the sunshine of actual facts,' Seiler v. Whiting, 52 Ariz. 542, 84 P.2d 452, 455; for at the hearing of June 19, 1959, the respondent court admitted in evidence a lease executed by Gladys E. Porter, leasing space in the Arizona Hotel, the preamble of which recited that the lessors, William A. Porter, Gladys E. Porter, and the petitioners herein were partners; and as we said in the Seiler case '* * * The presumption, when the opposite party has

produced prima facie evidence, has spent its force and served its purpose, and the party then, in whose favor the presumption operated, must meet his opponent's prima facie evidence with evidence and not presumptions. * * *'.

[Further, evidence that this presumption completely disappeared is indicated by Gladys Porter's counterclaim in Idaho, which stated: "the parties hereto own as community property an interest in the Arizona Hotel * * *", infra; the findings of the Idaho Court that the property was partnership as indicated by the finding of fact: "The court finds that the interest of [the Porter sisters] in and to the Continental Hotels System, a co-partnership, * * *, is a bona fide partnership interest therein, * * *. The Court further finds that at all times partnership tax returns have been filed with both the Federal and State governments and that the interests of the intervenors has at all times been so declared by the records, books and files of said co-partnership.", infra; and, that the presumption was not conclusive by language approved by this Court in Kemble v. Porter, 88 Ariz. 417, 357 P.2d 155.]

"The net result of the majority opinion in upholding the action of the trial court in ordering the receiver to pay to Gladys E. Porter the sum of $1,000 per month for support of herself and minor children from the Arizona Hotel prior to an adjudication and a decree that such property was community property of William A. Porter and Gladys E. Porter, permits an individual creditor of a member of a partnership to have partnership property applied in liquidation of her claim before an accounting is had of the partnership and before the creditors of the partnership are satisfied. * * *" 86 Ariz. at 411, 347 P.2d at 40–41.

Prior to the separate maintenance decree in favor of Gladys Porter, the Porter sisters intervened in the suit and contended the hotel property was owned by a partnership. A perfunctory reading of the separate maintenance decree conclusively shows that Gladys Porter had a lien only on the parties' "community property" in this state. The pertinent portion of the Arizona separate maintenance decree is as follows:

"* * * The Court further finds that all of the community property of the plaintiff and defendant located in the State of Arizona should be charged with the support of the plaintiff, and for that purpose any *community interest* in the Arizona Hotel, being * * * is to be used for the payment of plaintiff's and the minor children's support and maintenance, and should be set aside for that purpose.

* * * * * *

"4. That the plaintiff have a lien on all of the *community property* of the parties hereto for support under a *pendente lite* order, which has not yet been paid to her * * *.

"5. That any *community interest* of the parties hereto in the Arizona Hotel being * * * is hereby charged with payment of the support to the plaintiff and that the lien hereinabove set forth is to affix to any community interest in the Arizona Hotel." [Emphasis added]

There is no doubt under the laws of this state that if the Arizona Hotel property was subsequently determined to be partnership property the above decree would be ineffective as to such. It scarcely seems necessary to cite authority for the proposition that partnership property, or the interests of an individual partner in partnership property, may not be sold under attachment or execution for the individual debt or other personal obligation of one of the partners. An unlimited sale of partnership property under an execution against only one of the partners is not in compliance with the statutory law of this state.

A.R.S. § 29–225 subsec. B(3) specifically prohibits the levying of an attachment or execution upon the partner's interest in partnership property for a personal obligation. The only remedy is that provided

by A.R.S. § 29–228, where a charging order may be permitted on a judgment charging the interest of the debtor partner. Prior to the enactment of the Uniform Partnership Act, this Court in Olds Bros. Lumber Co. v. Marley, 72 Ariz. 392, 236 P.2d 464, recognized the above rule. See also, Sherwood v. Jackson, 121 Cal.App. 354, 8 P.2d 943; State v. Elsbury, 63 Nev. 463, 175 P.2d 430, 169 A.L.R. 364.

Since A.R.S. § 29–225 prohibits the attachment or execution of a partner's right in specific partnership property, except on a claim against the partnership, the levy of the general execution upon the Arizona Hotel property, the sale, issuance of a certificate, and the issuance of a deed were void, until the issue of whether the property was community property or partnership property was determined.

It is well established that only the right, title and interest of a judgment-debtor is sold at an execution sale, Fay v. Harris, 64 Ariz. 10, 164 P.2d 860, and if the sheriff attempts to sell property other than that of the judgment debtor, the sale is void and the purchaser acquires no title to the property sold. Steinfeld v. Copper State Mining Co., 37 Ariz. 151, 290 P. 155; Costello v. Friedman, 8 Ariz. 215, 71 P. 935.

As was stated by this Court in Burney v. Lee, 57 Ariz. 41, 46, 110 P.2d 554–556:

"Was the ownership or right to possession of the premises determined in either cause No. 44643 or No. 46685? It is clear that in the first, an action by Lee against the Millers for money due, it was not involved and could not have been. It is true the court rendered judgment for Lee and at the same time ordered the judgment lien on the premises foreclosed and the property sold to satisfy the judgment but this did not determine that the premises whose title then stood in the name of Alice Luther and had for more than a year were the property of the Millers and not hers. When he filed the suit Lee caused the writ of attachment to be issued and levied on a number of parcels of real estate as the property of the Millers, among which was that in question here, but in ordering the lien foreclosed and the property sold to satisfy the judgment the court did not determine that the property was his. So, naturally, the order foreclosing the lien and directing the sale applied only to the interest of the Millers, whatever that was, and could not have deprived Alice Luther who was not even a party to the action of her interest, if she had any. This left open the question as to who was the owner, in fact it had not been raised, so when Lee became the purchaser of the premises at the sheriff's sale he acquired no more than the Millers then had, a matter that was thereafter to be determined, provided it should be questioned by the record title holder or her grantee."

Gladys Porter's position and the majority opinion are correct only if the Arizona Hotel property had been adjudicated community property of Arnold and Gladys Porter, and not partnership property belonging to the Continental Hotels System. At the time of the sheriff's sale, this issue had not been determined. This was the very reason given by this Court for dismissing the appeal, from the denial of a motion to set aside the execution sale, in Kemble v. Porter, 88 Ariz. 417, 357 P.2d 155. If it had been judicially determined that the Arizona Hotel property was community property, then the majority opinion might be correct in stating the property belonged to Gladys Porter as her separate property and Idaho should have given full faith and credit to an Arizona judgment. This was not the case before the Idaho court. The majority opinion would require that full faith and credit be given an Arizona sheriff's sale which is not the law. Only final judgments on the merits by a competent court, absent fraud and with jurisdiction, are within the ambit of the full faith and credit clause of the United States Constitution.

Before this matter came to trial in Arizona, a court of competent jurisdiction, the

Idaho District Court, determined that the Arizona Hotel property was the property of the Continental Hotels System partnership and not of the community consisting of Arnold and Gladys Porter. This determination is res judicata and entitled to full faith and credit in Arizona. Day v. Wiswall's Estate, 93 Ariz. 400; 381 P.2d 217. The result is that Gladys Porter purchased nothing at the sheriff's sale.

I do not agree that this Court "has held that the Arizona Hotel was community property as between Gladys and Arnold by virtue of a strong presumption which was never overcome and has recognized that Gladys Porter could obtain Arnold's interest in the hotel as her separate property by purchasing it at the sheriff's sale to satisfy her judgment for support payments due her." We held in Porter v. Stanford, supra, that the lower court had authority to order the husband or receiver of community property to pay separate maintenance "pendente lite", and that the property in issue was presumed community until shown otherwise. Pendente lite translates into "[p]ending the suit; during the actual progress of a suit; during litigation." Black's Law Dictionary, 4th ed., p. 1290. In this case it meant pending determination whether the property was partnership or community property. Our prior decisions did not hold the property to be community. Heretofore, a presumption has never meant the same as a judgment.

It is obvious from A.R.S. § 25–342, subsec. B that the amount of a final judgment for separate maintenance "may be adjudged a lien upon the separate property of the husband." The separate maintenance decree referred only to any community interest of Arnold Porter. This statute fixes the type property upon which a judgment lien in a separate maintenance action may attach, and we should limit the type of property to separate under the doctrine of *inclusio unius est exclusio alterius*. This statute recognized the theory of community property as explained in La Tourette v. La Tourette, 15 Ariz. 200, 137 P. 426, that un-

til there is a dissolution of the community by death, annulment or divorce, the wife's interest in the property is identical and inseparable from the husband's. Therefore, a decree for separate maintenance cannot dispose of community property of the parties since the marriage relationship is not terminated. Jacquemart v. Jacquemart, 125 Cal.App.2d 122, 269 P.2d 951; O'Connor v. O'Connor, 91 Cal.App.2d 147, 204 P.2d 916; Ducasse v. Modica, 224 La. 318, 69 So.2d 358; Radermacher v. Radermacher, 59 Idaho 716, 87 P.2d 461. The trial court had no power to dissolve the community and make a division of the property in a separate maintenance action or cause community property to be sold. This rule of law should not be permitted to be circumvented by the issuance of a general execution, a levy on the property and a sale to the appellee. What the court could not directly do by its decree, Gladys Porter could not indirectly accomplish by a sale under a general execution.

Even if we assume that the trial court could permit a lien on any community property of the Porters, it does not follow that the property became community. The past due alimony became vested in Gladys and to this extent was entitled to recognition by the courts. While this was a final judgment, the subsequent execution could not have determined the ownership of the Hotel.

The judgment was dependent on a contingency and was not a final determination of the contention between all parties. The contingency was that the Hotel would subsequently be judicially declared community property. This fact never occurred.

The general law as to the conclusiveness of a judgment being of prime necessity to a valid execution is:

"* * * a judgment is not generally considered final where further judicial action is necessary in order fully and finally to settle the rights of the parties, as where the judgment settles only some of several issues of law or fact, or does not dispose of the case as to all the par-

ties; * * *. A judgment is not final which is to become effective only on the happening of a future event or contingency or which is made subject to revision at a future specified date." 49 C.J.S. Judgments § 11, p. 38.

Not only must a judgment be final as between the parties to permit an execution, it must, also, dispose of claims and rights of all the parties. No judgment in this state disposed of the contention by Kemble and the Porter sisters that the property was partnership. Since the separate maintenance decree was final only as to past due alimony between Gladys and Arnold Porter, the Idaho Court was not obligated to give full faith and credit to any alleged determination of the Arizona Hotel property as affecting the Porter sisters. Gladys Porter never held the hotel as her separate property as between her and her husband if the property was later determined to be partnership, and certainly did not hold the property as separate as between her and the Porter sisters or Kemble, by the execution sale. See Miller v. Gregory, 82 Cal. App. 634, 256 P. 431; Takahaski v. Kunishima, 34 Cal.App. 367, 93 P.2d 645.

A second reason for reversal of this case is the Idaho decree. Even if we accept Gladys Porter's view that the Idaho court, in decreeing the divorce, failed to give appropriate effect to the adjudication made in the former Arizona action, the courts of Arizona are compelled to accord full faith and credit to the Idaho judgment. The asserted denial of the Arizona separate maintenance decree by the Idaho court does not permit or justify retaliation by the courts in Arizona. Gladys Porter's remedy to correct any alleged error was by appeal from the Idaho decree through the Idaho courts, and, if necessary to the Supreme Court of the United States.

The majority opinion adopts the questionable constitutional doctrine that where one state renders a judgment and the parties relitigate the issue in a second state, the original jurisdiction does not have to give full faith and credit to the second conflicting judgment. Support is found for this position in the case of Colby v. Colby, 78 Nev. 150, 369 P.2d 1019, cert. denied, 371 U.S. 888, 83 S.Ct. 186, 9 L.Ed.2d 122. This decision has been criticised by legal commentators. See, 63 Colum.L.Rev. 560; 31 Geo.Wash.L.Rev. 648; 16 Vand.L.Rev. 193; 15 Stan.L.Rev. 331.

A reading of United States Supreme Court cases does not permit such a tenuous and chimerical distinction. In Sutton v. Leib, 342 U.S. 402, 72 S.Ct. 398, 96 L.Ed. 448, a federal court applying Illinois law in a diversity case was required to give full faith and credit to a New York court's finding that impeached the jurisdiction of a Nevada ex parte divorce since the New York judgment was res judicata. The Court stated the New York "decree is entitled to full faith throughout the Nation, in Nevada as well as in Illinois." In Morris v. Jones, 329 U.S. 545, 67 S.Ct. 451, 91 L. Ed. 488, the state of Illinois was required to give full faith and credit to a Missouri judgment which was subsequent to an Illinois court order staying all suits against an unincorporated insurance association. The case of Treinies v. Sunshine Mining Co., 308 U.S. 66, 60 S.Ct. 44, 84 L.Ed. 85, held that where parties appear and litigate jurisdiction in one state and then relitigate the same issue in a second state to final judgment, the res judicata doctrine prohibits an assertion in a third action that the first judgment was entitled to full faith and credit in the second jurisdiction. See also, Milliken v. Meyer, 311 U.S. 457, 61 S.Ct. 339, 85 L.Ed. 278; Roche v. McDonald, 275 U.S. 449, 48 S.Ct. 142, 72 L.Ed. 365. It is my judgment that the above cited cases conclusively answer this question and should be followed in deciding this matter.

Additional support for this position is found in the Restatement of Judgments, 342, which states:

"Where in two successive actions between the same parties inconsistent judgments are rendered, the judgment in the second action is controlling in a third action between the parties."

Furthermore, subsection (e) of § 42 states:

"The rule stated in this Section is applicable not only where the actions are brought in the same State, but also where they are brought in different States."

Specifically on point is subsection (d) of the above section which is as follows:

"The rule stated in this Section is applicable where a question of title to property is raised in the three actions. If in the first action it is held that one of the parties has the title to the property, and in the second action the prior judgment is not alleged or if it is alleged the court erroneously holds that it is not conclusive, and it is held that the other party has the title to the property, then in a third action the judgment in the second action and not the judgment in the first action is conclusive between the parties."

This Court on numerous occasions has stated that in the absence of prior decisions to the contrary, this state will follow the Restatement whenever applicable. See MacNeil v. Perkins, 84 Ariz. 74, 324 P.2d 211; Bristor v. Cheatham, 75 Ariz. 227, 255 P.2d 173; Ingalls v. Neidlinger, 70 Ariz. 40, 216 P.2d 387; Waddell v. White, 56 Ariz. 525, 109 P.2d 843; Cole v. Arizona Edison Co., Inc., 53 Ariz. 141, 86 P.2d 946; Smith v. Normart, 51 Ariz. 134, 75 P.2d 38. It is not clear why we should deviate from this established rule in the instant case. The law enunciated in the Restatement of Judgments, § 42, is applicable to this matter and should be followed.

Gladys Porter did appeal a portion of the Idaho divorce decree and her single assignment of error to the Supreme Court of Idaho was as follows:

"The Court erred in enjoining appellant [Gladys Porter] from maintaining or instituting any action or from receiving the benefits of any judgment previously obtained against or affecting the property known as the Arizona Hotel."

The Supreme Court of Idaho upheld the Idaho divorce decree except they modified the decree as to one section. In Porter v. Porter, 84 Idaho 400, 373 P.2d 327, that Court stated:

"Section 17 of the judgment enjoins the appellant 'from maintaining, prosecuting or instituting any action against the plaintiff or intervenors affecting those properties known as Arizona Hotel from date hereof.' This enjoinder will prevent appellant *from exercising any rights which she may have outside the present action and to all rights which may enure to her in the future by virtue of this decree or otherwise.*

"Appellant should not be precluded from enforcing her rights *under this decree* in this state or any other state *providing she has fulfilled her obligations as provided therein.* To this extent the trial court is directed to amend its decree." [Emphasis added].

The Supreme Court of Idaho discussed the effect of a valid foreign divorce on a prior determination of the right to separate maintenance by a sister state. The court cited the case of Lynn v. Lynn, 302 N.Y. 193, 97 N.E.2d 748, cert. denied, 342 U.S. 849, 72 S.Ct. 72, 96 L.Ed. 640, which held that a Nevada divorce terminated support money obligation imposed by the prior New York separate maintenance judgment where both parties appeared in the Nevada action. Other states have held the right to support or maintenance does not survive a valid foreign divorce where both parties appear in the divorce action. See e. g., Barber v. Barber, 51 Cal.2d 244, 331 P.2d 628; Lowry v. Lowry, 174 Kan. 526, 256 P.2d 869; Chittick v. Chittick, 332 Mass. 554, 126 N.E.2d 495; Loeb v. Loeb, 118 Vt. 472, 114 A.2d 518. The Idaho Supreme Court then went one step further than termination of the Arizona separate maintenance decree, and discussed the authority of the trial court in prohibiting Gladys Porter from enforcing the pre-existing judgment against that share of the community property awarded Arnold Porter. As to this matter, the Idaho Supreme Court concluded that Gladys Porter submitted to the jurisdiction of the Idaho trial court for

determination of her rights, and by so doing, she had submitted her rights under the separate maintenance decree and any other claims or demands to the Idaho court. Accord, Gilbert v. Gilbert, 83 Ohio St. 265, 94 N.E. 421. This determination cannot be collaterally attacked in this state as it is res judicata.

We are not dealing with a foreign ex parte divorce decree affecting prior support claims. The case presented is where a divorce was granted by a sister state and both parties to the marriage were before the court. The Idaho court was capable, and did, affect the in personam rights of the parties. We are compelled to give full faith and credit to any disposition of the Arizona support claims made by the Idaho court, and cannot adjudicate the support claims since the Idaho court settled the relationship once and for all. Bates v. Bodie, 245 U.S. 520, 38 S.Ct. 182, 62 L.Ed. 444. We must look to the Idaho decree to determine the status of the support rights under the prior Arizona decree, which indicates the support rights were merged in the divorce decree by the Idaho court.

The United States Supreme Court, in Sherrer v. Sherrer, 334 U.S. 343, 351, 68 S.Ct. 1087, 1091, 92 L.Ed. 1429, stated: " * * * the requirements of full faith and credit bar a defendant from collaterally attacking a divorce decree on jurisdictional grounds in the courts of a sister State where there has been participation by the defendant in the divorce proceedings, where the defendant has been accorded full opportunity to contest the jurisdictional issues, and where the decree is not susceptible to such collateral attack in the courts of the State which rendered the decree." See also, Coe v. Coe, 334 U.S. 378, 68 S.Ct. 1094, 92 L.Ed. 1451. Certainly, general appearance is participation for the purpose of this rule. Haden v. Haden, 120 Cal.App.2d 722, 262 P.2d 73.

Gladys Porter appeared personally in Idaho and contested that court's jurisdiction over the Arizona Hotel property. The trial court ruled adverse to her contention and determined ownership of the property. This Court, by the command of the United States Supreme Court in the above cited cases, cannot now determine that the Idaho decree was rendered without jurisdiction.

A third reason why Gladys Porter should not now be permitted to claim an interest in the Arizona Hotel property is her actions in dealing with the property before the Idaho court. Gladys Porter in her counterclaim for divorce in Idaho alleged:

" * * * that the parties hereto own as community property an interest in the Arizona Hotel located at the corner of Third Avenue and Washington Street in Phoenix, Arizona * * * ;"

Thus, she admitted in her pleadings that the parties own as community property an interest in the Arizona Hotel. The Idaho trial court pursuant to the statutes of that state had jurisdiction to divide the community property of the marriage. Ida.Code § 32–712. Appellee placed the issue squarely before the Idaho court and should not be heard at this late date to contend that Idaho had no jurisdiction.

As a result of the Idaho divorce decree Gladys Porter executed the following documents:

"RELEASE OF JUDGMENT

"COMES NOW the above-named Plaintiff and Defendant in Intervention, GLADYS E. PORTER, and hereby releases that certain Judgment and Decree entered by the above-entitled court [Arizona], on the 14th day of May, 1959.

"This release is made in compliance with that certain Judgment and Decree made and entered in that certain action designated as Civil Action No. 18556–A by the District Court of the Eighth Judicial District of the State of Idaho in and for the County of Kootenai on the 28th day of December, 1960."

"ASSIGNMENT

"KNOW ALL MEN BY THESE PRESENTS: That the undersigned, Gladys E. Porter, does hereby sell, assign, set over, transfer and convey unto W. A.

Porter, two-thirds of all of her right, title and interest in and to that certain partnership known as the Continental Hotels System; and the said Gladys E. Porter does hereby also sell, assign, set over, transfer and convey unto Pearline Porter and Pauline Porter Leonard, one-sixth each of all of her right, title and interest in and to that certain partnership known as the Continental Hotels System; this assignment being made and given pursuant to that certain Judgment and Decree made and entered by the District Court of the Eighth Judicial District of the State of Idaho in and for the County of Kootenai on the 28th day of December, 1960.

"DATED:    February 27, 1961."

"QUITCLAIM DEED

"For Value Received    GLADYS E. PORTER does hereby convey, release, remise and forever quitclaim unto PEARLINE PORTER and PAULINE PORTER LEONARD, an undivided one-sixth interest each in and to all of her right, title and interest in and to the following described premises, to-wit:

"Lots 1, 3 and 5, Block 74, original townsite of Phoenix according to the maps and records of the County Recorder of Maricopa County, State of Arizona, together with all good will, trade name, fixtures, furniture, furnishings and equipment and all supplies and every incident and appurtenant, including rental agreements, affecting the same.   (Also known as the Arizona Hotel)

"AND   That certain co-partnership known  as  the  Continental  Hotels System."

Gladys Porter also executed a quitclaim deed identical to the above conveying an undivided two-thirds interest to Arnold Porter.

Even assuming the majority opinion correct, these instruments conveyed all of Gladys Porter's interest in the Arizona

Hotel and released the prior judgment. She has absolutely and unequivocally waived any right, title and interest in the property in dispute.  The law does not permit a party to maintain such conflicting positions simultaneously.

Some reliance is placed upon the fact that the Arizona Hotel, being real property, was located in Arizona.  This did not deprive the Idaho court of jurisdiction to adjudicate the interests of the various parties before the court and, acting in personam, to make an effective order disposing of the property.  We have discussed this matter previously, and our language in Kennedy v. Morrow, 77 Ariz. 152, 268 P.2d 326, is appropriate.  It was argued in the *Kennedy* case that a deed executed pursuant to the order of a California court could not operate as an effective conveyance of real property in Arizona.  In rejecting this contention, this Court said:

"The proposition contended for by plaintiff is not the law.  When equity has jurisdiction of the parties it may adjudicate their interests in real property lying outside the territorial jurisdiction, and acting in personam, it will make such orders as the disposition of the case warrants.  It is immaterial that the decree of the court could not of its own force transfer an interest in the realty, for equity may use its contempt process on the person, and compel the parties to execute deeds, releases, quitclaims, etc., which are effective of their own force."   77 Ariz. at 161, 268 P.2d at 333.

This same principle was enunciated in Butterfield v. Nogales Copper Co., 9 Ariz. 212, 80 P. 345, and reiterated in Santa Cruz Ranch v. Superior Court, 76 Ariz. 19, 258 P.2d 413.  The same rule has been applied in the State of Idaho.  Idaho Gold Mining Co. v. Winchell, 6 Idaho 729, 59 P. 533.

The Idaho court did not try title to Arizona real property but merely computed and divided community debts and assets pursuant to personal jurisdiction over the parties.  Gladys Porter voluntarily submitted to the jurisdiction of the Idaho court and

having submitted her interest in the community estate to that court for determination, should now be bound by its decision. The fact that she deeded away title to the Arizona Hotel property can be of no avail. In addition, the Idaho court found:

> "that the plaintiff [Arnold Porter] is able to pay and that the defendant [Gladys Porter] is entitled to receive the sum of $1200.00 per month as alimony."

Having voluntarily submitted to the jurisdiction of the Idaho court, Gladys Porter cannot complain if the findings of fact and divorce decree are now binding upon her.

The United States Supreme Court has discussed the effect of an in personam judgment concerning real property in a case concerning land lying between Nebraska and Missouri. The Nebraska court litigated the matter and the losing party went to Missouri claiming the land was located in the State of Missouri. The United States Supreme Court in Durfee v. Duke, 375 U.S. 106, 84 S.Ct. 242, 11 L.Ed.2d 186, stated:

> "With respect to questions of jurisdiction over the person, this principle was unambiguously established in Baldwin v. Iowa State Traveling Men's Ass'n, 283 U.S. 522, 51 S.Ct. 517, 75 L.Ed. 1244. There it was held that a federal court in Iowa must give binding effect to the judgment of a federal court in Missouri despite the claim that the original court did not have jurisdiction over the defendant's person, once it was shown to the court in Iowa that that question had been fully litigated in the Missouri forum. 'Public policy,' said the Court, 'dictates that there be an end of litigation; that those who have contested an issue shall be bound by the result of the contest; and that matters once tried shall be considered forever settled as between the parties. We see no reason why this doctrine should not apply in every case where one voluntarily appears, presents his case and is fully heard, and why he should not, in the absence of fraud, be thereafter concluded by the judgment of the tribunal to which he has submitted his cause.'

283 U.S., at 525–526, 1 S.Ct., at 518, 75 L.Ed. 1244.

> "Following the *Baldwin* case, this Court soon made clear in a series of decisions that the general rule is no different when the claim is made that the original forum did not have jurisdiction over the subject matter. Davis v. Davis, 305 U.S. 32, 59 S.Ct. 3, 83 L.Ed. 26; Stoll v. Gottlieb, 305 U.S. 165, 59 S.Ct. 134, 83 L.Ed. 104; Treinies v. Sunshine Mining Co., 308 U.S. 66, 60 S.Ct. 44, 84 L.Ed. 85; Sherrer v. Sherrer, 334 U.S. 343, 68 S.Ct. 1087, 92 L.Ed. 1429. In each of these cases the claim was made that a court, when asked to enforce the judgment of another forum, was free to retry the question of that forum's jurisdiction over the subject matter. In each case this Court held that since the question of subject-matter jurisdiction had been fully litigated in the original forum, the issue could not be retried in the subsequent action between the parties." [Footnotes omitted]

The Court concluded by saying this rule of jurisdictional finality should apply to a case involving real property as between the parties to the litigation.

The majority opinion states, without any authority, that "Divorce actions where the court undertakes to divide community property both in and out of the forum must be carefully distinguished." There is no reason or logic for such a conclusion. Every case that I have read on this point is just the opposite of the above statement.

The cases of Farley v. Farley, 227 Cal. App.2d 1, 38 Cal.Rptr. 357, cert. denied 379 U.S. 945, 85 S.Ct. 438, 13 L.Ed.2d 543, and Rozan v. Rozan, 129 N.W.2d 694 (N.D.), are illustrative of the usual rule. Both cases held that where a divorce court, having in personam jurisdiction over both parties, ordered one party to convey real property located in another state, the courts of the state where the real estate is located must give the entire decree full faith and credit as the facts thus determined are res judicata in the subsequent action.

Also, there can be no question at this date that if a divorce court has in personam jurisdiction over both parties, and orders the execution of a deed by one party, and if that party executed the deed, even under judicial duress or threat of contempt, the deed will convey title even though the land is located in another state. See e. g., Phillips v. Phillips, 224 Ark. 225, 272 S. W.2d 433; Rozan v. Rozan, supra; Fall v. Fall, 75 Neb. 104, 120, 113 N.W. 175, aff'd Fall v. Eastin, 215 U.S. 1, 30 S.Ct. 3, 54 L.Ed. 65. The Idaho court as an incident to the divorce action had jurisdiction to determine the rights and liabilities of the community. Gladys Porter, in her pleading, admitted the property was community and thus did not consent to jurisdiction or attempt to confer jurisdiction on the Idaho court.

There is yet another reason why the majority solution should not stand as the law in this area. The result deprives the Porter sisters and Kemble of property without due process of law. This Court, by its decision today, has taken it upon itself to overrule the Idaho court's construction of its own court rules. I question our jurisdiction to make such an implied reversal of that court.

The majority opinion admits that a court may determine the rights of a third party claiming an interest in real property that is involved in a divorce action. Nevertheless, the solution adopted by this Court, after interpreting the Idaho Rules of Civil Procedure, Rules 14 and 24(a), states there was no common question of law or fact permitting intervention. The ownership of the hotel property was a common disputed fact between Gladys Porter, Arnold Porter, the Porter sisters and Kemble.

The Porter sisters were permitted to intervene in Arizona; Kemble was permitted to intervene in Arizona; both contended the property belonged to the partnership. No determination occurred in the courts of this state as to the character of the property prior to the Idaho court's determination that the Arizona Hotel was

partnership property. The Porter sisters intervened in the Idaho divorce action claiming the property was partnership property; Gladys Porter in her pleadings stated the property was community; this was a common question of fact, i. e., the character of the property. This Court now holds the Idaho trial court erred in determining the ownership of the property and permitting the intervention. If there was error in the Idaho divorce action, it was a matter for the Idaho appellate court, not this Court.

Assuming, arguendo, that the Arizona sheriff's sale decided the ownership of the hotel property, which it could not have done, there is no way that it could have affected the rights of the Porter sisters or Kemble. They did not have their day in court in Arizona prior to the Idaho proceedings.

The property labeled Gladys Porter's separate property by the majority was only between Gladys and Arnold Porter and had never been so adjudicated as to the Porter sisters. There was still pending a dispute in Arizona between the parties.

The Idaho trial court had jurisdiction to decide this matter. The subject matter, the divorce proceeding, was before the court; all of the parties claiming ownership to the property, except Kemble, were before the court; and there was no fraud involved.

The first determination of the ownership of the property between Gladys Porter and the Porter sisters was in Idaho. The trial court rendered a decree finding the property in Arizona belonged to the Continental Hotels System, a co-partnership. The decision was appealed and affirmed except as before mentioned, and the judgment became final. This Idaho judgment is entitled to full faith and credit pursuant to the United States Constitution and statutes enacted thereto.

It is no answer to say the partnership was not a party to the Idaho divorce action or the Continental Hotels System did not appear. Idaho has adopted the Uniform Partnership Act which does not make a

legal partnership an independent juristic entity, and whatever recognition is given therein to the entity theory is solely for procedural or conveyancing purposes. McKinney v. Truck Ins. Exchange, 324 S.W. 2d 773 (Mo.App.); Church Budget Envelope Co. v. Cornell, Ohio App., 136 N.E.2d 101; Stilgenbaur v. United States, 115 F.2d 283 (9th Cir.); Thomas v. Industrial Comm., 243 Wis. 231, 10 N.W.2d 206, 147 A.L.R. 103. Therefore, there was no requirement that the partnership be a party to the suit. Ida.Code § 5–323; Ida. Rules Civ.Proc., Rule 4(d)(3). Each individual partner of the Continental Hotels System, a co-partnership, was before the court and the Idaho court could adjudicate the rights of the partners.

There is no question the Idaho trial court found the property in issue to be partnership as shown by the following portion of its decree:

"The court finds that the interest of Pauline Porter Leonard and Pearline Porter in and to the Continental Hotels System, a co-partnership, formerly the Rickett Hotel System, is a bona fide partnership interest therein, having been purchased and acquired by them by the contribution of capital assets in the early formation of said hotel enterprise. The Court further finds that at all times partnership tax returns have been filed with both the Federal and State governments and that the interest of the interveners has at all times been so declared by the records, books and files of said co-partnership."

This finding is determinative of the issues in this appeal and must be given due faith and credit in this State.

For the numerous reasons set forth above, I cannot concur in the decision of this Court in the matter. Any of the single reasons enumerated would be sufficient to reverse this matter and require the lower court to give full faith and credit to the Idaho decree. The majority of this Court pounce upon a result that is not supported by law nor by facts in this matter. This case

transcends equitable considerations or retaliatory justice, and must be decided pursuant to the Constitution of the United States. The underlying theory of the full faith and credit clause is to terminate a matter once it has received full consideration on the merits. This case received full consideration on the merits in a sister state. Hence, the judgment of the trial court should be reversed with an order to dismiss appellee's action.

McFARLAND, Justice (dissenting):

I cannot agree with the result reached by the opinion of the majority. I agree with the third ground and specific reasons as set forth in the dissent of Justice Udall.

As stated by Justice Udall, Gladys Porter submitted herself to the jurisdiction of the Idaho court and alleged that the parties "own as community property an interest in the Arizona Hotel," thereby placing the issue before the Idaho court.

The majority opinion states that Gladys Porter alleged in her answer that the Arizona Hotel was community property, burdened with a lien, but that two weeks later it was sold under execution sale and became separate property by reason of the sheriff's sale "which fact must have been brought to the attention of the Idaho court" but does not state how it must have been brought to its attention. The records in the instant case include pleadings but not the transcript of testimony; however, the bringing of the matter of the sale to the attention of the Idaho court would not change the situation.

In the instant case Gladys Porter, in her supplemental answer filed after the Idaho judgment, alleged the Idaho court was without jurisdiction to determine ownership to the Arizona property because the property was in custodia legis of the Superior Court of Maricopa County. She also sought a charging order against any interest of Arnold Porter in the Continental Hotels System in the same pleading. She further sought to have the Idaho court give full faith and credit to the separate maintenance

decree, alleging there was due and owing to her under said judgment the sum of $23,-693.21 and that this amount will increase by $1400 on the first day of May, 1961 and the first day of each month thereafter until said decree is modified or set aside. She asks that the judgment and decree of the Eighth Judicial District Court of the State of Idaho, insofar as it relates to the divorce of the parties and to the support and alimony of a minor child, Tom Clark Porter, and to plaintiff's attorneys' fees and costs, be established as a foreign judgment and that a charging order be issued out of the Superior Court of Maricopa County against the interest of Arnold Porter, also known as W. A. Porter, in the said copartnership known as the Continental Hotels System. She further asks that the said charging order provide that additional payments which became due under the judgment and decree of the Idaho court become a lien against the interest of said Arnold Porter, also known as W. A. Porter, in said Continental Hotels System.

In any event, by her conduct in Idaho, having accepted the benefits of the judgment and decree of the Idaho court, she waived any interest she possessed in the Arizona Hotel property. By signing the quitclaim deeds she is now estopped from claiming any interest in the property. However, the conveyance of her interest in these properties could only convey such interest as she had on the date she signed the quitclaim deeds—on February 27, 1961. This was some nine months after she obtained a deed to the property under the sheriff's sale.

The order of the court under which the property was sold was for separate maintenance and attorneys' fees. The record does not show whether the attorneys' fees were paid by cash or by a conveyance of an interest in the property by Gladys Porter. If by the latter method, her conveyance under the decree of the Idaho court would be subject to whatever encumbrance or conveyance she had previously made of the property to her attorneys.

It is my opinion that the case should be reversed for further proceedings, including the determination of the interest, if any, which Gladys Porter conveyed by her quitclaim deeds.